This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: February 9, 2015**

**NO. 34,229**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EUGENE M. FERRI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Fernando R. Macias, District Judge**

Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**Maes, Justice.**

{1} Eugene Ferri (Defendant) was convicted of killing Gilles Delisle, Helga Delisle, and Peter Weith, aggravated burglary with a deadly weapon, unlawful taking of a motor vehicle, and two counts of tampering with evidence. Defendant was sentenced to three terms of life imprisonment for the three convictions of first-degree murder; nine years for aggravated burglary, which was enhanced by one year pursuant to the firearm enhancement statute; eighteen months for unlawful taking of a motor vehicle; and two three-year sentences for tampering with evidence. All of Defendant's sentences run consecutively. Defendant appeals his convictions directly to this Court. *See* N.M. Const. art. VI, § 2; *see also* Rule 12-102(A)(1) NMRA (providing a right to direct appeal when a sentence of life imprisonment has been imposed). We affirm all convictions but vacate the firearm enhancement, and remand for re-sentencing.

**I. FACTS AND PROCEDURAL HISTORY**

{2} At trial, testimony proved that for several years prior to the events underlying this case, Defendant was involved in multiple contentious legal proceedings with victims Gilles and Helga Delisle and Peter Weith. These proceedings included litigation involving the Rushfair Apartments in El Paso, Texas (the Rushfair

litigation), and litigation surrounding debts owed by Defendant and his mother (the debt litigation).

{3}     Defendant's business dealings with Peter Weith, which resulted in the Rushfair litigation, involved a contract to renovate the Rushfair Apartments, owned by Peter Weith. Defendant eventually filed a lawsuit against Peter Weith's company and Gilles and Helga Delisle over the construction of the Rushfair Apartments. The amount in issue totaled between $700,000 and $1,000,000.

{4}     The debt litigation involved Gilles Delisle, who held debts on behalf of his nephew, owed by Defendant and Defendant's mother, Carol. Defendant's debts were secured by collateral in two corporations owned by Defendant and in Defendant's home. Defendant's mother's debts were secured by a rental property complex, an office building, and a building housing a daycare.

{5}     In 2006, Gilles Delisle hired an attorney to help collect the debts owed by Defendant and his mother. Gilles Delisle filed suit against Defendant in November 2006 and against Defendant's mother in February 2007. Peter Weith became involved in the debt litigation after he purchased debts owed by Defendant and his mother.

{6}     In addition to a previous judgment obtained against Defendant's mother by Peter Weith in September 2007, a February 2008 trial resulted in a judgment against

2

Defendant for $140,000 and against Defendant's mother for $550,000. As a result of the judgments, Peter Weith obtained the right to foreclose on the three properties owned by Defendant's mother. At the time of the judgments, Defendant was receiving the rents from his mother's properties, forming Defendant's primary income. In July 2008, following the judgment against them, Defendant and his mother both filed for bankruptcy. As a result of the bankruptcy proceedings, a stay was put in place, stalling any attempt by Peter Weith or Gilles Delisle to foreclose or collect rent on the collateral properties.

{7} On April 14, 2010, Gilles Delisle attended a hearing regarding the Rushfair litigation and seemed happy about how the hearing had gone. He planned to attend a foreclosure sale for the sale of properties owned by Defendant, arising out of the debt litigation, the next day. Gilles Delisle headed home around 4:30 p.m., after stopping by his attorney's office.

{8} On the morning of April 15, 2010, following concerns about the Delisles' absence from the foreclosure sale, a welfare check at the Delisle home led to the discovery of the bodies of Gilles Delisle, Helga Delisle, and Peter Weith. Gilles Delisle was shot eight to ten times, including in the head. Helga Delisle was shot once

3

in the back, and Peter Weith was shot twice in the head.

{9} The State presented evidence at trial to identify Defendant as the assailant, and to prove he had the deliberate intent to kill each victim, in part, through the testimony of Ricky Huckabay (Huckabay), Defendant's tenant. Huckabay testified that the afternoon of the murders Defendant called and met Huckabay at La Llorona Park around 4:30 p.m. Defendant instructed Huckabay not to bring his cell phone. At Defendant's request, Huckabay drove Defendant, in Huckabay's vehicle, to a Pic Quik store to use a pay phone to call Gilles Delisle, who did not answer. Defendant then had Huckabay drive Defendant to the Delisle residence, explaining that if Gilles Delisle saw Defendant's vehicle, Gilles Delisle would "freak out" and would refuse to speak to Defendant. Huckabay left Defendant at the Delisle residence. When Defendant exited Huckabay's car, Defendant carried a green bag taken from his own vehicle.

{10} After Huckabay dropped Defendant off at the Delisle home, Huckabay returned to the park to wait for Defendant. After waiting for some time, Huckabay went back to the pay phone at the Pic Quik and called the Delisle residence. Receiving no answer, Huckabay returned to the park. Thirty to forty-five minutes later, Defendant arrived in a Nissan Pathfinder belonging to Gilles Delisle. Defendant instructed

4

Huckabay to follow him, saying "I got to get rid of this thing." Defendant left the Pathfinder at another location and returned to Huckabay's vehicle. Defendant and Huckabay then returned to the park. Defendant took the green bag, which he had taken to the Delisle home, into a restroom and then emerged from the restroom without the green bag and wearing different clothes.

{11} Later that same evening Huckabay met with Defendant, and Defendant told Huckabay what had happened at the Delisle residence. Defendant, wearing a mask and gloves, waited for Gilles Delisle to come home and then shot him. When Defendant saw that Gilles Delisle had not died, he shot him again. Defendant then heard the sound of a car horn and opened the front door to see Peter Weith. Defendant grabbed Peter Weith by the back of the head, pulled him into the house saying, "[y]ou know who I am and what you did." Defendant took Peter Weith into the back room and shot him. Defendant told Huckabay that Peter Weith was a "bonus" because he had not expected Peter Weith to be at the Delisle home. After Defendant shot Peter Weith, Defendant waited for Helga Delisle to arrive. He told Huckabay that Helga Delisle kept calling the Delisles' home phone. When Helga Delisle arrived home, she ran in the house yelling "Oh, Gilles, Gilles." Defendant shot her, too. Defendant then took

the Delisles' Pathfinder and returned to the park to meet Huckabay. Huckabay further testified that Defendant stated that he was proud of the murders and that he continued to brag about what he had done over the next few months. Defendant told Huckabay that killing the victims "felt good," that he would like to do it again, and that "[i]t didn't bother [him] a bit." In a recorded conversation, Huckabay asked Defendant whether he would do it differently if he had the chance, and Defendant responded, "I'd do the procedure differently. A couple of things we made mistakes on, but over, nah, fuck it . . . ."

{12} Defendant testified at trial that he was not the perpetrator because he was elsewhere. Defendant presented various receipts dated from April 14, 2010, to prove he could not have been the murderer. Defendant proceeded to explain to the jury that on the day of the murders he had been in El Paso with his girlfriend. He testified that he then went to a gas station around 3:43 p.m., went to his mother's house and took a nap and then went to his friend Arthur Valdez's house around 5:30 p.m. for about 15-20 minutes. Arthur Valdez testified that Defendant was at the Valdez house that evening around 5:30 p.m. Defendant testified that after leaving Arthur Valdez's house, Defendant went to a local deli at 6:05 p.m., went to get gas at 6:31 p.m., went

6

to Albertsons around 7:00 p.m., then went back to his mother's house where he stayed the rest of the evening.

{13}     Defendant testified that he did not meet with Huckabay that day or go with him to either the Pic Quik or the park. Defendant testified that he did not go with Huckabay to the Delisle residence, that he did not meet with Huckabay later that night, and that Defendant had not confessed to Huckabay. Defendant further testified that he had no motive to kill the victims, and that it was Huckabay who killed the victims.

{14}     Defendant raises the following issues on appeal: (1) Whether the district court erred in admitting evidence of Defendant's demeanor toward the victims; (2) Whether the district court erred in admitting evidence that Defendant lied during a bankruptcy proceeding where the victims were creditors; (3) Whether the district court erred in admitting evidence of Defendant's property at issue in a civil lawsuit in which the victims were involved; (4) Whether the district court erred in admitting a prison telephone call between Defendant and his mother; (5) Whether the district court erred in admitting State's Exhibit 233, a stipulation containing the phrase "guilty plea proceeding"; (6) Whether the district court erred in denying Defendant's challenge for cause as to Juror 46; (7) Whether sufficient evidence existed to support Defendant's convictions; and (8) Whether, taken together as a whole, the district court's errors

amounted to cumulative error. We also address whether the district court should have applied the firearm enhancement charge to Defendant's aggravated burglary charge, as raised in the State's Answer Brief.

## II. STANDARD OF REVIEW

{15} Because issues one, two, and three, and issues four and five involve the same standards of review, those standards are discussed here. The standards of review for all other issues are discussed below. Issues one, two, and three require a review for abuse of discretion. When a district court's evidentiary ruling is properly preserved for review, we examine the ruling under an abuse of discretion standard. *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks omitted). We will not say that the district court "abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

{16} Issues four and five were not properly preserved for review. "When an evidentiary issue is not properly preserved, our review is generally limited to questions of plain or fundamental error." *State v. Allen*, 2000-NMSC-002, ¶ 17, 128 N.M. 482,

994 P.2d 728; Rule 12-216(B)(2) NMRA. In a review for fundamental error, we first determine whether an error occurred. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 114 N.M. 815, 192 P.3d 1192. If an error occurs, we determine whether the error was fundamental:

> We exercise our discretion to employ the fundamental error exception "very guardedly," and apply it "only under extraordinary circumstances to prevent the miscarriage of justice." Accordingly, we will use the doctrine to reverse a conviction only "if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served. Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity."

*Id.* ¶ 13 (citations omitted); *see also State v. Trujillo*, 2002-NMSC-005, ¶ 60, 131 N.M. 709, 42 P.3d 814 (holding that because the Court found "substantial evidence in the record to support Defendant's convictions, and because Defendant failed to demonstrate circumstances that 'shock the conscience' or show a fundamental unfairness," no fundamental error existed).

**III.    DISCUSSION**

**A.    Whether the district court erred in admitting evidence of Defendant's demeanor toward the victims**

{17}    Defendant argues that the district court erroneously admitted, over his objection,

9

evidence of his demeanor toward the victims during the deposition in the debt litigation and on the day of the murders. Defendant contends that evidence of his prior acts was improperly admitted character evidence, which provided "scant probative evidence of motive," and any value of such evidence was outweighed by potential prejudice, was erroneous, and an abuse of the district court's discretion. Defendant also argues that this evidence was improper opinion testimony by lay witnesses.

{18} The following additional facts are relevant to this issue. At trial, the victims' attorney in the debt litigation testified that Defendant was observably angry and hostile toward Gilles Delisle during a deposition in May 2009. The attorney also testified that Defendant answered the deposition questions sarcastically. An employee at an investment firm frequented by Defendant testified at trial that Defendant appeared agitated and upset on the day of the murders. The employee saw Defendant at the firm's office, following the hearing regarding the Rushfair litigation that Gilles Delisle attended. The owner of the investment firm testified that Defendant seemed concerned about the Rushfair litigation, and was making increasingly frequent requests for funding assistance from the investment company. The owner also testified that Defendant expressed his hatred for Gilles Delisle and Peter Weith.

**1.    Evidence of Defendant's demeanor under Rules 11-401, 11-402, 11-403, and 11-404(B)**

{19}    Only relevant evidence is admissible. *See* Rule 11-402 NMRA. "Evidence is relevant if A. it has any tendency to make a fact more or less probable than it would be without the evidence, and B. the fact is of consequence in determining the action." Rule 11-401(A), (B) NMRA. The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Rule 11-403 NMRA.

> Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Evidence should be excluded as unfairly prejudicial in the sense of being too emotional if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason.

*State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citations omitted) (holding that "evidence that [the victim] suffered from mental illness and had attempted suicide in the past is not the type of evidence that has the unusual propensity to prejudice, confuse, inflame or mislead the fact finder."). Additionally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

11

accordance with the character." Rule 11-404(B)(1) NMRA. However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, [or] intent . . . ." Rule 11-404(B)(2).

{20} In *State v. Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829, this Court held that evidence of a defendant's prior acts relating to the victim were admissible under Rule 11-404(B) to prove motive. In *Rojo*, the State advanced the theory that the defendant killed the victim because she had rejected the defendant. 1999-NMSC-001, ¶ 47. The defendant's theory was that the victim loved the defendant and therefore the defendant had no motive. *Id.* This Court held that under these circumstances, evidence of the defendant's and victim's deteriorating relationship and the specific actions surrounding her reason for rejecting the defendant "directly addresse[d] the motivational theories presented at trial . . . [and t]hus, the trial court did not abuse its discretion by admitting this evidence . . . ." *Id.* This Court further held that this prior act evidence was highly probative because it related to assessing theories of motive, and therefore the district court did not abuse its discretion in finding that "the probative value of this evidence was not substantially outweighed by other considerations" under Rule 11-403. *Rojo*, 1999-NMSC-001, ¶ 48; *see also Flores*, 2010-NMSC-002, ¶¶ 28-29 (holding that "evidence of [d]efendant's accusations

12

against [the victim], while not conclusive when viewed in isolation from the other evidence, could have made it appear more probable to the jury that he was motivated to hurt or kill [the victim] than would have been the case had the evidence been kept from them. The evidence therefore meets the definition of relevant evidence in Rule 11-401 and was admissible under Rule 11-402.").

{21}     Evidence of Defendant's demeanor during the deposition was relevant and highly probative where it tended to prove the State's theory that Defendant's deteriorating relationship with the victims, along with the loss of his property to the victims, motivated him to murder them. Evidence of Defendant's anger and hostility toward the victims during the legal proceedings was not "sensational or shocking" and did not constitute unfair prejudice. Evidence of Defendant's past acts relating to the victims was admissible under Rule 11-404(B) because this evidence was not entered to prove character, but to prove motive. Evidence of Defendant's deteriorating relationship with the victims directly addressed the theories of motive presented by the State at trial. This evidence could have made it more likely to the jury that Defendant was motivated to kill the victims, than had the evidence been kept from them.

{22}     The trial court did not abuse its discretion in admitting evidence of Defendant's demeanor toward the victims. The evidence was relevant, not unfairly prejudicial, and

properly admitted.

**2.      Opinion testimony by lay witnesses**

{23}      Opinion testimony by a lay witness is limited to an opinion that is "A. rationally based on the witness's perception, B. helpful to clearly understanding the witness's testimony or to determining a fact in issue, and C. not based on scientific, technical, or other specialized knowledge . . . ." Rule 11-701(A)-(C) NMRA. In *State v. Warsop*, 1998-NMCA-033, ¶ 15, 124 N.M. 683, 954 P.2d 748, *cert. denied* 124 N.M. 589, 953 P.2d 1087, the Court of Appeals held that an officer's testimony that the defendant appeared to be serious when he made threatening statements was proper lay testimony under Rule 11-701. *See also e.g., U.S. v. Mastberg*, 503 F.2d 465, 470 (9th Cir. 1974) ("[U]nder the modern, and probably majority, view a lay witness may state his opinion that a person appeared nervous or intoxicated.").

{24}      Here, the witnesses who testified regarding Defendant's demeanor toward and about the victims formed their opinions based on their own perceptions. The witnesses testified that Defendant appeared angry, hostile, agitated, and upset. This evidence was helpful in determining motive, which was a fact in issue. As in *Warsop*, the witnesses at Defendant's trial gave proper opinion testimony on behavior within the normal scope of human emotion. 1998-NMCA-033, ¶ 15. Further, forming an

14

opinion about these emotions does not require specialized knowledge. Accordingly, the district court did not abuse its discretion in admitting evidence of Defendant's demeanor toward the victims because the evidence was proper lay opinion testimony.

**B.      Whether the district court erred in admitting evidence that Defendant lied during a bankruptcy proceeding where the victims were creditors**

{25}    At trial, the State presented evidence that during the bankruptcy proceeding Defendant misrepresented, under oath, the disposition of his assets. The assets specifically included an extensive gun collection, hundreds of taxidermied animal specimens, trucks, cars, and a boat, all of which the bankruptcy court found hidden in shipping containers and storage sheds only after the execution of search warrants. At his trial, Defendant testified that he lied about his assets to keep them from Gilles Delisle and other creditors.

{26}    Defendant argues that the district court erred in allowing evidence pertaining to Defendant's lies under oath at the bankruptcy proceeding because this was improperly admitted character and other-act evidence under Rules 11-404(A)(1) and 11-404(B), and the probative value of the evidence was not substantially outweighed by the factors in Rule 11-403. Defendant also argues that this was not harmless error where such evidence made the jury more likely to believe that Defendant was a person

15

of low moral character.

{27} "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 11-404(A)(1). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, [or] intent . . . ." Rule 11-404(B)(2).

{28} The procedure for admitting evidence under Rule 11-404(B) requires first, identification of the "consequential fact to which the proffered evidence of other acts is directed." *State v. Serna*, 2013-NMSC-033, ¶17, 305 P.3d 936 (internal quotation marks and citation omitted). Second, the rule requires a demonstration of the other act's "relevancy to the consequential facts, and the material issue, such as intent, must in fact be in dispute." *Id.* (internal quotation marks and citation omitted). Third, if the evidence offered is of a crime other than the one charged, the other crime must "have a real probative value, and not just possible worth on issues of intent, motive, absence of mistake, or accident, or to establish a scheme or plan." *Id.* (citation omitted). "[T]he rationale for admitting the evidence [must be] to prove something other than

16

propensity." *Id.* Finally, "under Rule 11-403 NMRA, the probative value of the evidence used for a legitimate, non-propensity purpose [must] outweigh[] any unfair prejudice to the defendant." *Id.* (internal quotation marks and citation omitted). "Evidence should be excluded as unfairly prejudicial in the sense of being too emotional if it is best characterized as sensational or shocking . . . ." *Stanley*, 2001-NMSC-037, ¶ 17 (internal quotation marks omitted); *see also Rojo*, 1999-NMSC-001, ¶¶ 47-48 (holding that probative value of the defendant's deteriorating relationship with the victim was relevant to proving motive and was not substantially outweighed by other considerations).

{29}     We first address Defendant's additional argument that other-act evidence, under Rule 11-404(B), relating to motive and intent should not have been admitted because Defendant's defense was that Huckabay fabricated Defendant's participation in the murders, and Defendant never disputed that the shooter had deliberate intent to kill the victims, only whether Defendant was the shooter. The State argues that evidence of Defendant's lies is relevant to motive because it tends to prove the State's theory that Defendant would go to extreme lengths against the victims, and that Defendant desired to have the "last word" in the litigations. This is the consequential fact to which the Rule 11-404(B) evidence is directed. Defendant cites *Serna*, 2013-NMSC-033, ¶ 20,

for the proposition that, where a defendant's theory of the case is not that the defendant lacked motive, but rather that the defendant did not commit the crime at all, the State cannot use motive for a basis to admit other-act evidence. Defendant misstates this Court's holding in *Serna*. Under *Serna*, a party cannot use Rule 11-404(B) to introduce evidence of a defendant's past criminal conviction if the State does not adequately explain the relevance of the past conviction to the case at bar. *See Serna*, 2013-NMSC-033, ¶¶ 19-21. *Serna* further holds that one of the Rule 11-404(B) exceptions must be in dispute for the State to use the exception to introduce other act evidence. *See Serna*, 2013-NMSC-033, ¶ 20.

{30} To obtain and uphold Defendant's conviction, the State had to produce sufficient evidence to prove every element of first degree murder beyond a reasonable doubt. *State v. Sarracino*, 1998-NMSC-022, ¶ 15, 125 N.M. 511, 964 P.2d 72. In a murder proceeding, the State can prove deliberate intention to take away the life of a victim, an element of first degree murder, through evidence of motive combined with evidence of the method used to kill the victims. *See Rojo*, 1999-NMSC-001, ¶ 24. Motive is relevant to guilt. *See Flores*, 2010-NMSC-002, ¶¶ 28-29 ("Proof of motive sheds light on the likelihood of a defendant's guilt, and intent is an essential element of murder. Evidence that makes motive or intent more or less probable is therefore

18

relevant."). Here, the State sought to use the motive exception in Rule 11-404(B) to introduce other act evidence. Because motive is relevant to guilt, and deliberate intention (an element of first degree murder) can be proved through motive combined with method, the district court did not abuse its discretion in allowing the State to present evidence of Defendant's motive to kill the victims.

{31} Evidence that Defendant lied during the bankruptcy proceeding cannot be used to prove propensity. However, the State did not present this evidence to prove that Defendant lied before and therefore he lied on another occasion. Further, this evidence was not entered at trial to show that Defendant lied before and therefore he is a killer. Rather, the state entered this evidence to show the conflicts between the parties, and the lengths to which Defendant would go to keep his property from the victims.

{32} Evidence that Defendant lied at the bankruptcy proceeding to protect his property from Gilles Delisle has real probative value, and not just possible worth, when along with other evidence that Defendant would go to extremes to keep his property from the victims, it tends to prove the State's theory that Defendant would commit murder to keep his property from the victims and have the last word in the dispute. This evidence is not outweighed by unfair prejudice to Defendant, under Rule 11-403, because it is not "sensational or shocking." *See e.g., Flores*, 2010-NMSC-002,

19

¶¶ 28-29 (evidence of obscene accusations about the victim not unfairly prejudicial). The district court did not abuse its discretion in admitting evidence of Defendant's lies during the bankruptcy proceeding. This evidence went to the State's theory of motive, was not offered to prove propensity, has real probative value, and is not outweighed by unfair prejudice to Defendant.

{33} Further, even if the evidence were admitted erroneously, its admission was harmless. "'[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict.'" *Serna*, 2013-NMSC-033, ¶ 22 ((quoting *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110)). As described throughout this Decision, the other evidence of Defendant's guilt was substantial, including the evidence of his motive to kill the victims to prevent them from taking his property. The jury, therefore, likely concluded that Defendant was "a person of low moral character" irrespective of the evidence of his lies under oath at the bankruptcy proceeding. Thus, even if the admission of the challenged evidence was erroneous, the error was harmless because we cannot say to a reasonable probability that it affected the verdict. *See id.* ¶ 31 (finding harmless error when there was substantial evidence of the defendant's guilt and the erroneously admitted evidence was merely cumulative of other evidence of the defendant's "bad, drug-dealing character").

**C.** **Whether the district court erred in admitting evidence of Defendant's property at issue in a civil lawsuit in which the victims were involved**

{34} The third issue on appeal involves evidence, entered over Defendant's objections, concerning specific descriptions of property Defendant stood to lose to the victims as a result of a civil judgment against him. At trial, Defendant objected to testimony by the victims' civil litigation attorney, describing collateral property of debts owed by Defendant and his mother. The defense agreed to testimony regarding the existence and amount of the judgment, but not to descriptions of the properties subject to the judgment. The district court overruled Defendant's objection holding that the evidence went to the State's theory of motive. On appeal, Defendant specifically objects to the attorney's testimony that Defendant's debts were secured by collateral in two corporations owned by Defendant and in Defendant's home, and that Defendant's mother's debts were secured by a rental property complex, an office building, and a building housing a daycare. Defendant argues that introduction of this evidence was an abuse of the district court's discretion because it was cumulative, irrelevant, and more prejudicial than probative under Rules 11-402 and 11-403, and that evidence of the judgment was sufficient without further detail.

{35} Only relevant evidence is admissible. *See* Rule 11-402. "Evidence is relevant

21

if A. it has any tendency to make a fact more or less probable than it would be without the evidence, and B. the fact is of consequence in determining the action." Rule 11-401. The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Rule 11-403. Where evidence is offered to prove a motive or a theory of the case, New Mexico courts have held there was no unfair prejudice. *See Flores*, 2010-NMSC-002, ¶ 36 (holding no abuse of discretion for evidence admitted of a defendant's vile and extreme accusations against a victim because such evidence was probative of motive and intent and where the district court judge took steps to minimize prejudicial effects). "Cumulative evidence is additional evidence of the same kind tending to prove the same point as other evidence already given . . . ." *State v. Johnson*, 2004-NMSC-029, ¶ 38, 136 N.M. 348, 98 P.3d 998 (internal quotation marks and citation omitted) (discussing cumulative evidence in the context of harmless-error analysis). A defendant's stipulation to certain facts does not prevent the State from presenting its case through related evidence rather than "through abstract stipulations." *State v. Martinez*, 1999-NMSC-018, ¶ 34, 127 N.M. 207, 979 P.2d 718; *see also Sarracino*, 1998-NMSC-022, ¶¶ 21-22 (holding that the district court did not err in allowing the State to present a witness at trial rather than agree to the defendant's stipulation as to

22

what the defendant thought the witness would testify to).

{36}     This evidence was relevant to motive. The State introduced evidence detailing the properties at issue to provide context to Defendant's anger toward the victims and about the judgment. Defendant was not merely losing money, he was losing specific properties to the victims, properties from which he collected rent and obtained his primary income. This evidence could have made it more likely to the jury that Defendant was motivated to kill the victims, than had the evidence been kept from them. Evidence of the properties was not unfairly prejudicial under Rule 11-403 because evidence of the specific properties is not "sensational or shocking." Evidence regarding descriptions of the properties was not cumulative when combined with evidence of the judgment because it was not evidence of the same kind, tending to prove the same point. Accordingly, the district court did not abuse its discretion in admitting evidence describing the property at issue in the civil suit because the evidence was relevant, not unfairly prejudicial, and not cumulative. Further, the State is not bound to present its case through Defendant's stipulations.

**D.     Whether the district court erred in admitting a prison telephone call between Defendant and his mother**

{37}     During trial, defense counsel adamantly objected to the introduction of a

23

multitude of phone call transcripts derived from calls made by Defendant while in prison. Defense counsel was especially concerned about phone conversations where Defendant discussed murder for hire and outlined lists of people to kill, including a judge and an attorney from the civil litigations. These conversations seem to have culminated in a federal investigation. The district court overruled defense counsel's objections.

{38} Following further objections by the defense, the State eventually agreed to redact portions of the phone calls that related to killing people associated with the civil litigations. After further arguments by the parties and discussions with the district court regarding the contents of the phone calls, the district court suggested that defense counsel and the State discuss and come to an agreement about which phone calls would be admitted into evidence. After a brief recess, defense counsel told the district court that he and the State had worked together to redact portions of the phone call transcripts and would have the recordings edited to reflect the changes. As a result of the parties' compromise, a recording and accompanying transcript were entered as State's Exhibits 234 and 235. Prior to the exhibits' admittance, defense counsel twice affirmed that the defense was not objecting to the admittance into evidence of Exhibits

24

234 and 235.

{39} On appeal, Defendant objects to the following statements, contained in Exhibits 234 and 235, that Defendant made to his mother: "[I]f I got out of here today, I'd go get my people and I'd get a bunch of people fucking killed"; "We are going to war"; and "[T]hey think they got my best guns. They don't even have the fucking machine guns and the M16's." Defendant's mother testified that it was not unusual for Defendant to become "heated or vent" during phone calls with his mother from prison. She stated that she did not take his threats seriously or think that he would "actually do something" to hurt the people he mentioned killing in the prison phone call. The State asked Defendant on cross examination about the phone calls from prison with his mother. Defendant stated that he said a lot of things "under duress and stress."

{40} Defendant argues that the recording and transcript of the prison phone call between him and his mother were irrelevant and more prejudicial than probative, constituting fundamental error. The State contends that Defendant is barred from arguing fundamental error on this issue because Defendant invited the error when the defense participated in the redaction of the calls. Defendant agrees with the State that the defense did not object to the admission of Exhibits 234 and 235 and did not properly preserve this issue for review. "Acquiescence in the admission of evidence

. . . constitutes waiver of the issue on appeal." *State v. Campos*, 1996-NMSC-043, ¶ 47, 122 N.M. 148, 921 P.2d 1266. Where a defendant has "invited the error," the defendant cannot invoke the doctrine of fundamental error "to remedy the defendant's own invited mistakes." *Id.*; *see also State v. Clark*, 1989-NMSC-010, ¶ 30, 108 N.M. 288, 772 P.2d 322 ("The fundamental error rule guards against the corruption of justice. The doctrine has no application in cases where the defendant by his own actions created the error, where to invoke the doctrine would contravene that which the doctrine seeks to protect, namely, the orderly and equitable administration of justice." (internal citations omitted)), *overruled on other grounds by State v. Henderson*, 1990-NMSC-030, ¶ 38, 109 N.M. 655, 789 P.2d 603.

{41} In *Campos*, this Court held that where a defendant had agreed to the admission of a witnesses's prior statements and voluntarily abandoned cross examination of that witness, the defendant invited the error and could not invoke the doctrine of fundamental error on appeal to claim a violation of his constitutional right to confront the witness. 1996-NMSC-043, ¶ 47; *see also State v. Bankert*, 1994-NMSC-052, ¶¶ 40-41, 117 N.M. 614, 875 P.2d 370 (holding that "[t]he doctrine of fundamental error [could not] be invoked to remedy the defendant's own mistakes" where defendant elicited the testimony prosecution commented on, which the defendant claimed was

26

prejudicial); *State v. Urioste*, 2011-NMCA-121, ¶ 44, 267 P.3d 820 (holding that defendant invited error and thus had no grounds for claiming on appeal that introduction of evidence of gang affiliation was prejudicial where defendant agreed that evidence of gang membership would be allowed for limited purposes and then testified on cross examination about his gang affiliation). In *State v. Foxen*, 2001-NMCA-061, ¶ 12, 130 N.M. 670, 29 P.3d 1071, the Court of Appeals held that they would "not withhold review for fundamental error" where defense counsel submitted faulty jury instructions as a result of oversight or neglect, "particularly in light of the well-established principle that adequate instruction on self-defense is the duty of the courts where it finds support in the evidence." In *State v. Ortega*, 2014-NMSC-017, ¶ 33, 327 P.3d 1076, this Court distinguished *Foxen* by pointing out that *Foxen* was about oversight and neglect, while the defendant in *Ortega* invited the erroneous jury instruction by objecting to a proposed modification and by objecting to reinstruct the jury after the jury expressed confusion. *See Ortega*, 2014-NMSC-017, ¶¶ 34-35. Defendant invited any error when defense counsel participated in the redaction of the transcript before it was admitted into evidence, and when the court asked if the defendant objected to the redacted transcript's admission, Defendant twice affirmed that there was none. Finally, Defendant invited any error because Defendant testified

27

about the phone calls on cross-examination. Accordingly, having invited any error in the recording and transcript of the prison phone call between him and his mother, Defendant cannot invoke the doctrine of fundamental error to remedy his own invited mistakes.

**E.      Whether the district court erred in admitting State's Exhibit 233, a stipulation containing the phrase "guilty plea proceeding"**

{42}      At trial, following testimony regarding law enforcement's discovery of the murder weapon in a latrine at La Llorona Park, the State told the district court that the parties had a stipulation they would like the court to read into evidence. The district court read to the jury the substantive portion of the stipulation, located on the first page of the exhibit.  The State then asked the district court to identify the stipulation as State's Exhibit 233.   The district court noted for the record that a decal identifying the document as State's Exhibit 233 was attached to the stipulation, "making it and admitting into evidence State's Exhibit 233."  The parties did not discuss Exhibit 233 further. Exhibit 233 is a two-page pleading entitled "Stipulation". The first page of the exhibit contains the case caption, the case number, and a description of the parties' stipulation. The second page, in the top left header of the page, reads, "State vs. Eugene Ferri," and directly below, "Guilty Plea Proceeding." The top right header has

a page number. The body of page two contains the district court judge's order and signature.

{43} Defendant argues on appeal that admission of Exhibit 233 containing the phrase "guilty plea proceeding" on the second page was highly prejudicial, devalued the presumption of innocence in the eyes of the jury, and constitutes fundamental error. Defendant further argues that the statement "guilty plea proceeding" would have "garnered consideration alongside the admission to ownership of the firearm used in the shootings, the jury would have been influenced by the additional language expressing that [Defendant] was proceeding to plead guilty in making this admission and, as such, the evidence was not harmless." The State agrees that the stipulation should not have been admitted as an exhibit, but rather UJI 14-112, the uniform jury instruction for stipulated facts, should have been utilized. The State contends, however, that this was invited error on behalf of Defendant and, alternatively, that it does not rise to the level of fundamental error. Defendant agrees with the State that this issue was not properly preserved and should be reviewed for fundamental error.

{44} We first determine whether the admittance of Exhibit 233 was an error. *See Silva*, 2008-NMSC-051, ¶ 11. The State agrees that, though the judge did not use it, nor did either party request it, use of the uniform jury instruction for stipulated facts

29

would have avoided the admittance of the stipulation containing the phrase "guilty plea proceeding." The State is correct that the parties and the district court should have utilized Uniform Jury Instruction 14-112 for stipulation of facts. The proper procedure was for the district court to read this instruction at the time the fact is stipulated to, but the instruction does not physically enter the jury room. *See* UJI 14-112 (use notes).

{45}     Admitting evidence of guilty pleas at trial is generally disfavored by New Mexico rules and courts. *See State v. Smile*, 2009-NMCA-064, ¶ 43, 146 N.M. 525, 212 P.3d 413 ("[S]uch evidence can be highly prejudicial because [i]t is also difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time [pleaded] guilty to the commission of the crime with which he stands charged." (alterations in original) (internal quotation marks and citation omitted)); Rule 11-410(A)(1) (barring evidence of "a guilty plea that was later withdrawn"). Because the UJI for stipulated facts should have been used and because evidence of guilty pleas is disfavored, the admittance of Exhibit 233 was error. After determining that admitting Exhibit 233 constituted error, the next step is to consider whether the error was fundamental, "begin[ning] with the presumption that the verdict was justified." *State v. Sosa*, 2009-NMSC-056, ¶ 37, 147 N.M. 351, 223 P.3d 348.

30

{46} Noting that we employ the fundamental error exception very guardedly, and apply it only under extraordinary circumstances to prevent the miscarriage of justice, the first question is whether Defendant's guilt is so questionable that upholding his convictions would shock the conscience. As discussed below, sufficient evidence existed to uphold Defendant's convictions. Here, Defendant's guilt is not so questionable that upholding his conviction would shock the conscience because Defendant is not "indisputably innocent." *See Silva*, 2008-NMSC-051, ¶ 14. The second question is, notwithstanding Defendant's apparent culpability, has substantial justice not been served with the admittance of this pleading to the jury. To resolve this question, we view the admittance of the pleading "in the context of the individual facts and circumstances of the case, as determined from our review of the entire record," *id.* (internal quotation marks and citation omitted), in order "to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Sutphin*, 2007-NMSC-045, ¶ 19, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). Justice has not been served, and a plain miscarriage of justice has occurred, when the error "go[es] to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Johnson*, 2010-NMSC-016, ¶¶ 25, 29, 148 N.M. 50,

31

229 P.3d 523 (citation omitted) (holding that because there was no indication that the jury was aware the defendant was wearing leg restraints during the trial, the presumption of innocence was not violated and the dignity of the judicial process was not affected).

{47}     While evidence of a guilty plea can be highly prejudicial, and is generally disfavored under our rules of evidence, the presumption of innocence was not violated or devalued, as Defendant claims, where neither party, nor the district court, called attention to the wording or identified the purpose of the phrase. Additionally, the offending phrase was on the top left header of the second page on one exhibit of over a hundred exhibits submitted to the jury including crime scene and autopsy photos. The jury only deliberated for several hours. There is no indication that the jury noticed the language, especially when the jury did not submit any questions about it during deliberations. The admittance of the phrase "guilty plea proceeding" to the jury did not constitute fundamental error because Defendant's guilt is not so questionable that upholding his conviction was the result of a plain miscarriage of justice that would shock the conscience of the Court. Furthermore, the error does not go to the foundation of Defendant's case or take from Defendant a right which was essential to his defense, nor does it devalue or violate the presumption of innocence. Accordingly,

32

Defendant's fundamental error argument is denied.

{48}   We take this opportunity to remind the State and defense bar to utilize UJI 14-112 for admitting stipulated facts into evidence. We also note that when UJI 14-112 is used, the instruction is not submitted to the jury, but just read into evidence.

**F.   Whether the district court erred in denying Defendant's challenge for cause as to Juror 46**

{49}   During voir dire, Juror 46 expressed concern about whether Defendant had access to the juror questionnaires. The district court informed Juror 46 that Defendant had a right to see everything that his attorney saw. Defense counsel told Juror 46 that the juror forms did not contain jurors' addresses or telephone numbers. The district court asked Juror 46 questions about his impartiality. Juror 46 said that he could follow instructions regarding the State's burden, that he could be fair and did not feel like he required special security. The district court then determined the juror could be impartial and denied Defendant's request to strike Juror 46 for cause. During the selection of alternate jurors, Defendant used his last peremptory strike to excuse Juror 46. Defendant argues that the district court abused its discretion in not excusing Juror 46 for cause based on impartiality, forcing Defendant to use a peremptory strike against Juror 46.

33

{50} "In general, we review the trial court's rulings regarding the selection of jurors for an abuse of discretion because the trial court is in the best position to assess a juror's state of mind, based upon the juror's demeanor and credibility." *State v. Allen*, 2000-NMSC-002, ¶ 83, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). "The challenging party bears the burden of proving juror bias." *Johnson*, 2010-NMSC-016, ¶ 31. Defendant, having the burden of proving juror bias, offered no evidence of juror bias, only that Juror 46 was concerned about Defendant viewing the juror questionnaires. Further, none of the alternate jurors participated in deliberations. The district court, which is in the best position to assess a juror's state of mind, asked the juror questions. The district court then determined the juror could be impartial. The district court did not abuse its discretion in refusing to excuse Juror 46 for cause where there was no evidence of juror bias "[b]ecause the significance of each statement depends on the credibility and demeanor of the prospective juror at the time it was made . . . [and] deference must be paid to the trial judge who sees and hears the juror." *Allen*, 2000-NMSC-002, ¶ 85 (internal quotation marks and citation omitted).

**G.      Whether sufficient evidence existed to support Defendant's convictions**

{51}      Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982,

34

and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant requests that this Court reverse all of his convictions and bar any further proceedings under his right to be free from double jeopardy. The standard of review for sufficiency of evidence is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). In a review for sufficiency of evidence, a reviewing court is deferential to the jury's findings. *Id.* ("New Mexico appellate courts will not invade the jury's province as fact-finder by second-guess[ing] the jury's decision concerning the credibility of witnesses, reweigh[ing] the evidence, or substitut[ing] its judgment for that of the jury. So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." (alterations in original) (internal quotation marks and citations omitted)). "Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks omitted).

**1.      First degree murder**

{52} Defendant argues that there was insufficient evidence to support his convictions for first degree murder when, based on his own testimony and evidence of the victims' whereabouts, it was impossible for him to have committed the murders. To uphold a conviction for first degree murder, substantial, direct or circumstantial evidence must exist to support each element of first degree murder as to each of the three victims: that Defendant (1) killed each victim, (2) with the deliberate intention to take away the life of each victim. *See* NMSA 1978, § 30-2-1(A)(1) (1994); UJI 14-201 NMRA.

> Deliberate intention is defined as, arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence.

*State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (internal quotation marks and citations omitted). The State can prove a defendant had deliberate intention to take away the life of a victim through evidence of motive combined with evidence of the method used to kill the victims. *See Rojo*, 1999-NMSC-001, ¶ 24.

{53} This Court held sufficient evidence of deliberate intent existed in the following cases. In *Rojo*, sufficient evidence of deliberate intent existed where the State presented evidence of motive and evidence that it took several minutes for the defendant to strangle the victim. 1999-NMSC-001, ¶ 24. In *Sosa*, sufficient evidence

36

existed of the defendant's intent to kill the victim where the defendant went to the victim's home armed with a gun, waited for the victim to arrive, and then shot the unarmed victim numerous times. 2000-NMSC-036, ¶ 14. In *State v. Coffin*, sufficient evidence of deliberate intention to kill existed where a defendant shot the victim four times in the back and the back of the head, and where the defendant told an acquaintance why the defendant had killed the victim. 1999-NMSC-038, ¶ 76, 128 N.M. 192, 991 P.2d 477. In *State v. Motes*, the Court determined sufficient evidence existed of deliberate intent where the State presented the following evidence: (1) that the defendant had mentioned wanting to kill the victim; (2) a contentious relationship between the defendant and victim; (3) defendant's motive to kill the victim; (4) that killing the victim likely took a period of time; (5) that the defendant made plans to be alone with the victim prior to the murder; (6) that the defendant was in possession of the substance used to murder her prior to her murder; (7) and that after the murder defendant covered up the crime and lied about the victims whereabouts. 1994-NMSC-115, ¶¶ 11-15, 118 N.M. 727, 885 P.2d 648.

{54} The following additional evidence is relevant to Defendant's first degree murder convictions. At trial, the State presented evidence that Defendant had been tracking Gilles Delisle for around a year prior to the murders. In 2009, Defendant began

37

obtaining Gilles Delisle's cell phone records every month, from a business acquaintance employed by Verizon Wireless. Defendant continued obtaining these records for about a year. Defendant later told Huckabay that Defendant was monitoring Gilles Delisle's movements. The State presented evidence that Defendant made statements prior to the murders about hating and wanting to kill the victims, and of his anger toward them. Huckabay testified that on the day Defendant learned that he had "lost the day care and the properties to . . . Mr. Delisle," Defendant became angry, telling Huckabay, "I'd like to kill that son of a bitch." Defendant told Huckabay that "rather than Mr. Delisle receive anything, [Defendant would] rather destroy it, hide it, get rid of it, anything, burn it, anything than Mr. Delisle get anything, because he didn't feel he owed him anything."

{55}    Viewed in the light most favorable to upholding the verdict, there was sufficient evidence to support the jury's finding that Defendant killed all three victims with deliberate intent. There was extensive evidence of his financial and vengeful motives to kill the victims and of their contentious relationship. Defendant made statements prior to the murders about his anger and hatred toward the victims and wanting to kill them. As to Gilles and Helga Delisle, Defendant was monitoring Gilles Delisle's movements. Defendant planned the murder of Gilles and Helga Delisle when he had

38

Huckabay drop him off at the Delisle residence so that the Delisles would not see his car or know he was there, then waited, armed, and shot both of them. The record further supports deliberate intent to kill Gilles Delisle where Defendant admitted to shooting Gilles Delisle a second time after seeing that the first shot had not killed him. Defendant later bragged about the murders, which lends support to a conclusion that Defendant had deliberate intent at the time of the murder.

{56} Defendant seemed to have been unaware that Peter Weith was going to be present at the Delisle home. "[I]t is possible in certain cases for a jury to reasonably infer from evidence presented that the deliberative process occurred within a short period of time—the crucial element being the presentation of other evidence." *State v. Tafoya*, 2012-NMSC-030, ¶ 42, 285 P.3d 604 (emphasis omitted). "Cases that have affirmed first degree murder convictions where the killing(s) occurred within a short period of time have relied on evidence beyond the temporal aspect of the crime in order to find sufficient evidence of deliberation." *Id.* (holding insufficient evidence of first degree murder where the only evidence of deliberate intent offered was the possible several second lapse between when Defendant shot one person and then shot the victim, and where the State did not present any evidence of motive. *Id.* ¶¶ 46, 54). In this case, Defendant's history of conflict with Peter Weith, his expressions of hatred

for Peter Weith and wanting to kill him, and his words to Peter Weith right before Defendant shot him is evidence beyond the temporal aspect of the crime to indicate that Defendant killed Peter Weith with deliberate intent. Deliberate intention is further supported by Defendant's statements to Huckabay after the murders, indicating that Defendant viewed the murder of Peter Weith as "a bonus" to the killings of Helga and Gilles Delisle.

{57}     Further, the jury was free to not believe Defendant and his alibi evidence that he was elsewhere at the time of the murders and therefore it was impossible for him to have committed the murders. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

**2.     Aggravated burglary**

{58}     Defendant contends that the State did not present sufficient evidence at trial to support a conviction of aggravated burglary. To uphold a conviction for aggravated burglary, we must determine whether substantial evidence existed that Defendant entered a dwelling without authorization and with the intent to commit murder once inside, and that Defendant was armed with a firearm. *See* NMSA 1978, § 30-16-4 (1963); UJI 14-1632 NMRA. The following facts are relevant to this issue.

40

{59} At trial, Huckabay testified when Defendant exited Huckabay's car at the Delisle residence, Defendant carried a green bag taken from his own vehicle. After the murders, Defendant took the same green bag into a restroom at La Llorona Park where the murder weapon was later recovered by police. The jury could have rationally found that because Defendant did not take his own car to the Delisle residence that evening, he was intending to enter the Delisle home, without the permission of the Delisles and to lie in wait to murder the victims. The jury could have further found that the green bag Defendant took into the Delisle home contained a gun, the murder weapon. Accordingly, viewed in the light most favorable to upholding the verdict, the evidence is sufficient to support the jury's finding that Defendant entered the Delisle home without permission, with a firearm, and with intent to commit murder once inside.

**3. Unlawful taking of a motor vehicle**

{60} Defendant argues that the State did not present sufficient evidence at trial to support a conviction of unlawful taking of a motor vehicle. To uphold a conviction for unlawful taking of a motor vehicle, we must determine whether substantial evidence existed that Defendant took the Delisle's car intentionally and without consent from the owner. NMSA 1978, § 30-16D-1; UJI 14-1660 NMRA. At trial, Huckabay testified that after dropping Defendant off at the Delisle home, he waited for

41

Defendant at a park, where Defendant later arrived in the Delisles' Pathfinder. Defendant instructed Huckabay to follow him, saying "I got to get rid of this thing." From this evidence, combined with evidence surrounding the murders and burglary, a rational jury could have found that Defendant intentionally took the Delisles' car after Defendant murdered the victims, and the victims could not and did not consent. Viewed in the light most favorable to upholding the verdict, the evidence is sufficient to support the jury's finding that Defendant intentionally took the Delisles' car without consent.

**4.     Tampering with evidence**

{61}     Defendant argues that the State did not present sufficient evidence at trial to uphold his conviction of two counts of tampering with evidence. The first count was for the gun, gloves, and clothes. The second count was for a shell casing. The following evidence is relevant to this issue.

{62}     At trial, Huckabay testified that after taking the green bag into a restroom at La Llorona Park, Defendant emerged without the bag and wearing different clothes. The murder weapon, with part of a glove attached, was later recovered by police in a latrine in that same La Llorona Park restroom. Huckabay, working with police after the murders, secretly recorded a conversation with Defendant where he asked

42

Huckabay to get rid of a "bullet," and later gave him a cartridge casing.

{63} "Under New Mexico law, the elements of tampering with evidence are (1) destroying, changing, hiding, placing or fabricating any physical evidence, and (2) with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." *Garcia*, 2011-NMSC-003, ¶ 13 (internal quotation marks omitted) (quoting NMSA 1978, § 30-22-5(A) (2003)). "When there is no other evidence of the specific intent . . . to disrupt the police investigation, intent . . . is often inferred from an overt act of the defendant." *Id.* (omissions in original) (internal quotation marks and citation omitted). In *Garcia*, the Court held the following:

> [That d]efendant perpetrated a sequence of overt acts in an effort to both rid himself of the firearm and conceal it from the police, permitting a rational jury to find both elements of Section 30-22-5(A) beyond a reasonable doubt. The trial transcript [was] littered with evidence of multiple acts committed by [d]efendant in an effort to thwart law enforcement efforts by concealing or transferring possession of the gun. . . . [including] two attempts to sell the gun . . . and two attempts to give the gun to another acquaintance, urging that it be hidden.

2011-NMSC-003, ¶ 14. This, the Court held, was sufficient evidence to support a conviction for tampering with evidence. *Id.* Separate counts for tampering with evidence are supported by sufficient evidence and do not constitute double jeopardy

43

when a defendant hides evidence at different times and in different locations. *See State v. DeGraff*, 2006-NMSC-011, ¶ 37, 139 N.M. 211, 131 P.3d 61 (holding that the defendant committed three discrete crimes of tampering with evidence where the defendant hid evidence at different times and in different locations by (1) throwing a weapon out a car window, (2) at a later time, abandoning a car, and (3) the next day hiding clothes).

{64}  The multiple acts by Defendant of concealing the gun and gloves in a park latrine, and then at a later time transferring possession of a shell casing to Huckabay, urging Huckabay to get rid of it, indicate Defendant's intent to thwart law enforcement efforts. This evidence supports two counts of tampering with evidence. Accordingly, viewed in the light most favorable to upholding the verdict, the evidence is sufficient to support Defendant's conviction of two counts of tampering with evidence.

**H.    Whether, taken together as a whole, the district court's errors amounted to cumulative error**

{65}  Defendant argues all of the errors raised on appeal, independently and cumulatively, denied him his right to a fair trial. "The cumulative error doctrine is strictly applied and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial." *State v. Guerra*, 2012-NMSC-

44

014, ¶ 47, 278 P.3d 1031 (internal quotation marks and citation omitted). "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *Id.* (internal quotation marks and citation omitted). We have found no error that demonstrates Defendant did not receive a fair trial. Accordingly, there was no cumulative error.

**I.      Whether the district court erred in applying the firearm enhancement charge, under NMSA 1978, Section 31-18-16, to Defendant's aggravated burglary charge when use of a firearm was instructed as an element of the aggravated burglary offense**

{66}    This error was not raised below by either party or by the district court. The State raised this error in the State's Answer Brief. The State and Defendant agree that applying the firearm enhancement charge to Defendant's aggravated burglary charge, when use of a firearm was instructed as an element of the aggravated burglary offense, was error and should be corrected on remand. The standard of review for determining whether an enhancement violates double jeopardy is a question of law, which we review de novo. *See e.g., State v. Redhouse*, 2011-NMCA-118, ¶ 5, 269 P.3d 8 ("We review Defendant's contention that modification of her sentence violated her constitutional guarantee against double jeopardy under a de novo standard of

review.").

{67} The inclusion of firearm enhancement violates double jeopardy where use of a firearm is an element of the enhanced offense. *See State v. Varela*, 1999-NMSC-045, ¶ 41, 128 N.M. 454, 993 P.2d 1280 (holding that "the firearm enhancements of sentences for the crimes of shooting into a dwelling and felony murder with a predicate felony of shooting at a dwelling constitute double jeopardy because the use of a firearm is an element of the crimes. . . . [And therefore,] the enhancements must be vacated." (citation omitted)); *State v. Franklin*, 1993-NMCA-135, ¶ 13, 116 N.M. 565, 865 P.2d 1209 (holding that "[b]ecause the State would not be required to prove any additional facts in order to have Defendant's sentence enhanced, . . . the firearm enhancement statute is subsumed within the offense of involuntary manslaughter by negligent use of a firearm. [And] [a]s a result, the inquiry is over and the statutes are the same for double jeopardy purposes–punishment cannot be had for both." (internal quotation marks and citations omitted)). *But cf. State v. Griffin*, 1993-NMSC-071, ¶ 31, 116 N.M. 689, 866 P.2d 1156 (upholding sentences for armed robbery and aggravated burglary with an enhancement for the use of a firearm in their commission). The aggravated burglary jury instruction used in Defendant's trial contained use of a firearm as an element. *See* NMSA 1978, § 30-16-4; UJI 14-1632.

46

A separate firearm enhancement instruction directed the jury to determine whether a firearm was used in the commission of the burglary. Because use of a firearm is an element of both aggravated burglary and the firearm enhancement, Defendant's right to be free from double jeopardy was violated. Accordingly, the firearm enhancement is vacated.

**IV.    CONCLUSION**

{68}    We affirm all convictions but vacate the firearm enhancement. We remand for resentencing.

{69}    **IT IS SO ORDERED.**


_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**


_____
**BARBARA J. VIGIL, Chief Justice**


_____
**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**