IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-033

Filing Date: June 27, 2013

Docket No. 33,021

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

HECTOR FLORES SERNA, JR.,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Fernando R. Macias, District Judge**

Bennett J. Baur, Acting Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Yvonne Marie Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**BOSSON, Justice.**

**{1}** In a prosecution for trafficking imitation controlled substances—in this case baking soda packaged to look like cocaine—the New Mexico Imitation Controlled Substances Act allows the jury to consider evidence of any prior criminal convictions of the accused "related to controlled substances or fraud." *See* NMSA 1978, § 30-31A-2(D)(5) (1983). On the other hand, our Rules of Evidence conscientiously restrict any evidentiary use of prior bad acts including criminal convictions. *See* Rules 11-404(B) NMRA; -403 NMRA. To avoid any conflict, we apply the state statute harmoniously with our Rules of Evidence. We hold

1

that any evidence of prior convictions referred to by statute must also be admissible under our evidence rules.

**{2}** Because the prior criminal convictions in this case do not satisfy Rule 11-404(B), we conclude that their admission into evidence was in error. After careful examination of the record, however, we acknowledge that the error was harmless and affirm the convictions. Agreeing with Defendant on one point of sentencing error, we remand to the district court for an amended sentence as set forth in this opinion.

**BACKGROUND**

**{3}** According to the testimony of Virginia Sanchez—the only eyewitness—she and the man she considered to be her husband, George Vargas, spent July 4, 2009, watching fireworks, grilling steaks, and getting high. At some point in the day, the two ran out of drugs and made some phone calls in an attempt to get more. Later that night, after Sanchez had already gone to bed, Hector "Loco" Flores Serna, Jr., the Defendant in this case, knocked on her door to sell them an eight ball of cocaine.

**{4}** Vargas got up to answer the door, and Sanchez reached the living room just in time to witness the drug deal. She saw Vargas handing Defendant money—$120—and Defendant was holding a plastic bag. Sanchez decided to test the substance in the bag, so she got some scissors, cut a small hole in the bag, and tasted the white powdery substance. It was baking soda, not cocaine.

**{5}** According to Sanchez, "[t]hen all hell broke loose." Defendant accused Sanchez and Vargas of switching the bag. Defendant told them that he had just bought it from a friend for $200, even though he was selling it to them for only $120, "and that his friend wouldn't do that to him."

**{6}** Defendant then pulled out a gun and waived it at them. The two urged Defendant to leave, but he kept getting more and more agitated. Then, according to Sanchez, as Defendant walked toward the door, he shot Vargas in the head, a wound which proved fatal. At trial, Sanchez testified as an eyewitness to these events, and the jury also heard a contemporaneous 911 call in which Sanchez identified Defendant as the assailant.

**{7}** Defendant was charged with various crimes, including first-degree murder and trafficking an imitation controlled substance—the baking soda packaged to look like cocaine—a fourth-degree felony. *See* NMSA 1978, §§ 30-31A-1 to -15 (1983) (as amended through 2002) (Imitation Controlled Substances Act hereafter ICSA). Before trial, the State filed a motion to allow testimony about two of Defendant's prior criminal convictions, one for possession of a controlled substance (methamphetamine) and the second for credit card fraud. The State based its argument on a specific provision in the ICSA that authorizes the jury to consider evidence of prior convictions related to "controlled substances or fraud." Section 30-31A-2(D)(5). Although expressing doubts about the admissibility of these prior

2

convictions, the trial court ultimately allowed the evidence based upon the specific language in the ICSA.

**{8}** After a jury trial, Defendant was convicted of first-degree murder and distribution of an imitation controlled substance, as well as other charges not related to this appeal. In considering the charge of first-degree murder, the jury was instructed on theories of both willful and deliberate murder and felony murder, the predicate felony being distribution of an imitation controlled substance. The jury returned a general verdict of guilty on first-degree murder and, therefore, distribution of an imitation controlled substance was correctly vacated as a separate, stand-alone conviction, though it remained as the predicate for felony murder. In addition to the base life sentence for first-degree murder, Defendant's sentence was enhanced by four years pursuant to the habitual offender statute, NMSA 1978, Section 31-18-17 (2003), as well as an additional one year based on the firearm enhancement statute, NMSA 1978, Section 31-18-16 (1993).

**{9}** Given his first-degree murder conviction and resulting life sentence, Defendant filed a direct appeal to this Court in which he raises two issues. *See* N.M. Const. art. VI, § 2 (providing for direct appeal from life sentences). First, Defendant claims that testimony about his prior unrelated convictions was not admissible under the New Mexico rules of evidence, which constitutes reversible error and entitles him to a new trial. Second, Defendant claims that the enhancements to his life sentence, for being a habitual offender and for the use of a firearm, are not authorized in capital cases. We consider these two appellate issues in the order raised.

**DISCUSSION**

**The Imitation Controlled Substances Act**

**{10}** The ICSA renders criminal what ordinarily would be a lawful act—in this case the sale of baking soda packaged as cocaine. The ICSA is directed toward circumstances in which a normally innocuous substance becomes a proxy for an illegal controlled substance, cocaine in this instance. *See* Section 30-31A-2(D). Specifically, the ICSA defines an imitation controlled substance as "a substance that is not a controlled substance which by dosage unit appearance, including color, shape, size and markings and by representations made would lead a reasonable person to believe that the substance is a controlled substance." *Id.*

**{11}** In addition to this definition, the ICSA also lists "factors" that the fact finder "may consider" which include the following:

(1) statements made by an owner or by anyone else in control of the substance concerning the nature of the substance or its use or effect;

(2) statements made to the recipient that the substance may be resold

3

for inordinate profit;

>   (3) whether the substance is packaged in a manner normally used for illicit controlled substances;

>   (4) evasive tactics or actions utilized by the owner or person in control of the substance to avoid detection by law enforcement authorities;

>   (5) *prior convictions, if any, of the owner or anyone in control of the object, under state or federal law related to controlled substances or fraud*; and

>   (6) whether the physical appearance of the substance is substantially identical to a controlled substance.

*Id.* (emphasis added).

**{12}**   Adding to the confusion in this case, the trial court noted the absence of any uniform jury instruction for a violation of the ICSA. After due deliberation, the trial court felt compelled to include "all of the elements that can be considered" in its instruction given to the jury, including all of Section 30-31A-2(D)(1)-(5). Thus, over objection of counsel, the court allowed testimony about Defendant's two prior convictions, albeit with a jury instruction limiting consideration of those convictions to the ICSA charge, not murder. On appeal, Defendant challenges the admissibility of that testimony about his prior criminal convictions and asks for a new trial as a result.

**Prior Convictions May Be Admitted Only When Permitted by the Rules of Evidence**

**{13}**   Defendant has argued throughout these proceedings that the Legislature cannot override by statute what this Court has promulgated by rule. We agree, and observe that the law has been settled on this subject for some time. *See State v. Belanger*, 2009-NMSC-025, ¶ 17, 146 N.M. 357, 210 P.3d 783 (noting that this Court has the ultimate rule-making authority).

**{14}**   Since *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 311, 551 P.2d 1354, 1358 (1976), it has been clear that the ultimate rule making authority over procedure resides in this Court, including the rules of evidence. This Court's plenary authority to regulate procedure stems from our constitutional power of "superintending control over all inferior courts." N.M. Const. art. VI, § 3; *Belanger*, 2009-NMSC-025, ¶ 17. We have previously acknowledged that our judicial authority "is not necessarily exclusive, and may co-exist with harmonious legislative enactments." *Belanger*, 2009-NMSC-025, ¶ 17 (citing *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶¶ 5-9, 138 N.M. 398, 120 P.3d 820). The pivotal question is whether legislative initiatives are truly "harmonious" with our evidentiary rules.

**{15}** In this case, such a harmonious reading means that evidence offered under the ICSA, such as these prior criminal convictions, would also have to be admissible under our rules of evidence, or more precisely, would not be excluded under our rules of evidence. *See* Rules 11-401, -404(B), and -403 NMRA. If the convictions would be admissible under our rules of evidence, then Section 30-31A-2(D)(5) instructs the court to inform the jury of the relevance of those prior convictions if they relate to controlled substances or fraud. The controlling question, therefore, is whether Defendant's prior convictions were properly admitted under our rules of evidence, and particularly Rule 11-404(B), without regard to the language in the ICSA.

**{16}** Evidence of prior bad acts, including prior convictions, may be admitted in certain instances, under Rule 11-404(B) which reads:

> (1) **Prohibited uses.** Evidence of a *crime*, wrong, or other act is *not* admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) **Permitted uses; notice in a criminal case.** This evidence [of a crime] *may be* admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecution must
>
> > (a) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial, and
> >
> > (b) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

(Emphasis added.) Rule 11-404(B) makes clear that evidence of prior convictions is not permitted to prove propensity—that the accused is of bad character and thus more likely to have committed the crimes presently charged.

**{17}** The procedure for admitting evidence under Rule 11-404(B) "requires counsel to identify the consequential fact to which the proffered evidence of other acts is directed." *State v. Lucero*, 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct. App. 1992). "The proponent of the evidence must demonstrate its relevancy to the consequential facts, and the material issue, such as intent, must in fact be in dispute." *State v. Elinski*, 1997-NMCA-117, ¶ 13, 124 N.M. 261, 948 P.2d 1209, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. "Evidence of other crimes than the one charged must however have a real probative value, and not just possible worth on issues of intent, motive, absence of mistake or accident, or to establish a scheme or plan." *State v. Mason*, 79 N.M. 663, 667, 448 P.2d 175, 179 (Ct. App. 1968) (internal quotation marks and citation omitted). As this Court recently stated in *State v. Gallegos*,

5

Part of the proponent's responsibility is also to cogently inform the court—whether the trial court or a court on appeal—the rationale for admitting the evidence to prove something other than propensity. In other words, more is required to sustain a ruling admitting [other-acts] evidence than the incantation of the illustrative exceptions contained in the Rule.

2007-NMSC-007, ¶ 25, 141 N.M. 185, 152 P.3d 828 (alteration in original) (internal quotation marks and citation omitted). Once "it is shown that evidence of other acts has a legitimate alternative use that does not depend upon an inference of propensity, the proponent must establish that under Rule 11-403 NMRA, the probative value of the evidence used for a legitimate, non-propensity purpose outweighs any unfair prejudice to the defendant." *State v. Kerby*, 2005-NMCA-106, ¶ 25, 138 N.M. 232, 118 P.3d 740.

{18}    In spite of this clearly established protocol for admitting prior convictions under Rule 11-404(B), the State chose another path, electing to rely almost exclusively on Section 30-31A-2(D)(5), as if the ICSA were a font of evidentiary authority independent of this Court. Preferring to stand alone on the ICSA, the State omitted Rule 11-404(B) from its written, pretrial motion to have the prior convictions admitted at trial. During a hearing on the motion, the State made a passing reference to the enumerated list in Rule 11-404(B), suggesting that the evidence "specifically could go to intent or knowledge." The State argued that the prior possession conviction showed that Defendant knew what was and was not cocaine, notwithstanding the obvious difference being that Defendant had been previously convicted of methamphetamine possession, not cocaine. The State had nothing relevant to say about the prior fraud conviction other than it might go to "intent."

{19}    This hardly survives scrutiny under our case law. Falling short of any effort to "inform the court," whether "cogently" or otherwise, of any true relevance to this particular case, the State did little more than offer "an incantation of the illustrative exceptions contained in the Rule," a shortcoming we warned against in *Gallegos*. And even now on appeal we are left to ponder what possible relevance these prior convictions could have had in this instance, other than, of course, their specific enumeration in the ICSA, but not in Rule 11-404(B).

{20}    Defendant's intent was not at issue in the ICSA prosecution; he was not claiming an innocent mistake or lack of knowledge about illicit drugs. Under our case law, the question of intent or knowledge "must in fact be in dispute." His defense went more to the heart of the prosecution's case: that it never happened at all, that he was never there, and that the witness Sanchez, an admitted drug user, made it all up. The State's "incantation" of intent and knowledge misses the mark.

{21}    Far from proving a relevant point under Rule 11-404(B), these prior convictions went solely to propensity, painting Defendant as a bad character from the drug world. Bearing no legitimacy under our rules, these convictions were inadmissible at trial, something the trial court duly recognized under our rules of evidence but was distracted by the confusing,

inconsistent, and discordant language of the ICSA. Clearly, admission of this prior-crimes testimony was in error. The question now turns, therefore, on the effect of the trial court's error, and specifically whether it requires us to reverse these convictions and remand for a new trial.

**Harmless Error**

**{22}** We review improperly admitted evidence for non-constitutional harmless error. *State v. Branch*, 2010-NMSC-042, ¶ 15, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. "[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (internal quotation marks and citation omitted).

**{23}** When assessing the probable effect of evidentiary error, "courts should evaluate all of the circumstances surrounding the error." *Id.* ¶ 43. This includes the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative. *Id.* These considerations, however, are not exclusive, and they are merely a guide to facilitate the ultimate determination—whether there is a reasonable probability that the error contributed to the verdict. *See id.* We proceed to that analysis.

**{24}** Here, the erroneous evidence of Defendant's prior convictions was admitted through the testimony of Detective Rudy Sanchez. Detective Sanchez was asked whether, in the course of his investigation, he found documentation of Defendant's prior convictions. The Detective responded that he had learned about Defendant's prior convictions for possession of a controlled substance, methamphetamine, and for credit card fraud. Documentation of the prior convictions was not admitted into evidence, and Defendant did not testify. Thus, this testimony was the only source through which the jury learned of Defendant's criminal record.

**{25}** Importantly, our review of the record shows that neither side placed much emphasis on the erroneously admitted evidence during trial. Immediately after hearing from Detective Sanchez, the jury was given a limiting instruction, informing them that they were to consider the evidence for the sole purpose of determining whether Defendant "committed the offense of distribution of an imitation controlled substance but for no other purpose." Defendant did not inquire into this testimony on cross examination, nor was it mentioned on redirect. The prior convictions were not mentioned again until the State's closing argument, during which the State briefly reminded the jury about the convictions when explaining the jury instructions. The State told the jury that it could consider "[w]hether the person has prior convictions for controlled substances or fraud. In this case the defendant has both." Nothing further was said. We can conclude, therefore, that the State did not exploit the erroneously admitted evidence at trial, nor did it make the evidence a significant part of its case against

7

Defendant. Given the abundance of other evidence against Defendant, the State simply did not need to do so.

**{26}** The evidence of Defendant's guilt was substantial, such that the jury likely did not rely on these two prior convictions when reaching its verdict. Sanchez, the sole eyewitness, identified Defendant as the one who shot Vargas. She gave a detailed account of how she and Vargas called Defendant to purchase more drugs, how Defendant came to the house late at night and became very agitated when she discovered that the baggie was filled with baking soda. She recounted how Defendant pulled a gun and shot Vargas. In court, Sanchez again identified Defendant as the shooter.

**{27}** In addition, the jury heard the tape of Ms. Sanchez's 911 call, in which she identified Defendant as the one who had shot Vargas. During closing, the State reminded the jury of what they had heard on the 911 tape.

**{28}** Further corroborating Sanchez's eyewitness testimony, physical evidence found at the scene linked Defendant to the crime. Similar .22 caliber shell casings were found both at the scene of the homicide and at Defendant's home. A ballistics expert testified that the shell casings were fired from the same gun. Although the gun used in the shooting was never found, a witness attending a Fourth of July party at Defendant's neighbor's house stated that she heard numerous gunshots coming from Defendant's house on the day of the shooting.

**{29}** Ironically, these prior convictions were largely unnecessary to the State's case. Sergeant Ralph Monget testified to being one of the first officers on the scene of the shooting. Inside the residence, he saw "a plastic baggy with what [he] believed was narcotics on a table in the front room." Based on his training and experience, whatever was in the baggie was packaged like narcotics. He explained to the jury that the baggie "appeared to be cocaine . . . because it was a white powdery substance inside of a plastic baggy tied off at the tip" which is "consistent with the way cocaine is typically packaged for resale." Thus, the jury heard specific and uncontradicted evidence that the bag of baking soda was made to appear to be cocaine, compelling evidence for a conviction under the ICSA.

**{30}** Also important, Defendant never challenged the assertion that the baggie contained an imitation controlled substance. As Defendant argues, "there was no dispute in the present case that the 7.14 grams of baking soda was meant to represent cocaine." Rather, Defendant's primary defense was that Ms. Sanchez was not credible and was making up the whole story. Thus, we agree with Defendant's argument that "[e]ither [Sanchez] was telling the truth, and *described* a drug deal, or she was lying, and *fabricated* a drug deal. In either case, however, the baggie of baking soda was a prop, unmistakably meant to appear to be cocaine." As Defendant wryly observes, he, Vargas, and Sanchez "were obviously not setting out to make biscuits that night."

**{31}**     Perhaps of greatest significance, the evidence of prior criminal convictions appears to be cumulative.  If the State wanted the prior convictions to prove Defendant's intent and knowledge of drugs and the drug trade—and his resulting bad character—other evidence had already established this at trial.  Sanchez testified that Defendant was "one of the people that we would buy [drugs] from."  She further explained that when she bought drugs from Defendant "[h]e usually delivered it." None of this testimony was challenged at trial.  By the time the State introduced evidence of Defendant's prior convictions, the prosecution had already established Defendant's knowledge of the drug trade, and his bad, drug-dealing character.   In the context of this particular case, therefore, it is difficult to see how Defendant, the drug user, could be any more damning than Defendant, the drug dealer.

**{32}**     In light of all the circumstances, therefore, we conclude that reference to these prior convictions, though error, was harmless.  Under the standard for nonconstitutional error, the State satisfies us that "there is no reasonable probability" that evidence of Defendant's prior convictions affected this verdict and contributed to Defendant's convictions.

### Enhancement of Defendant's Life Sentence Was Not Authorized by Law

**{33}**     Defendant argues, and the State agrees, that the sentencing enhancements applied to Defendant's life sentence were unlawful.  Defendant received sentencing enhancements for being a habitual offender, under Section 31-18-17, and for the use of a firearm in the commission of the offense, under Section 31-18-16.  Each of these enhancements, by their own terms, only apply to *noncapital* felonies.  *See* Section 31-18-17(A) ("A person convicted of a *noncapital* felony . . . ." (emphasis added)); Section 31-18-16(A) ("When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a *noncapital* felony . . . ." (emphasis added)).  Yet Defendant's sentence for murder, a capital felony, NMSA 1978, Section 30-2-1 (1994), was enhanced under each of these statutes.

**{34}**     While defense counsel inexplicably did not object to the enhancements, "[a] trial court does not have jurisdiction to impose an illegal sentence on a defendant and, therefore, any party may challenge an illegal sentence for the first time on appeal." *State v. Paiz*, 2011-NMSC-008, ¶ 33, 149 N.M. 412, 249 P.3d 1235.  Therefore, we agree with Defendant, as appropriately conceded by the State, that his sentence was improperly enhanced, and we remand to the trial court to correct the sentencing error.

### CONCLUSION

**{35}**     We affirm Defendant's convictions and remand for the trial court to correct the sentencing error.

**{36}     IT IS SO ORDERED.**

_____

**RICHARD C. BOSSON, Justice**

WE CONCUR:

_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *State v. Serna*, No. 33,021**

**APPEAL AND ERROR**
Harmless Error

**CRIMINAL LAW**
Controlled Substances
Felony Murder

**CRIMINAL PROCEDURE**
Enhancement of Sentence
Firearm Enhancement
Habitual Criminal
Prior Convictions

**EVIDENCE**
Admissibility
Prior Convictions or Judgments

**STATUTES**
Conflicting Statutes
Rules of Construction