This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. A-1-CA-35787**

**JOHN DOMINIQUE MCDOWELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

{1}     Defendant John Dominique McDowell appeals his conviction for aggravated battery (deadly weapon), contrary to NMSA 1978, Section 30-3-5 (A), (C) (1969).

Defendant argues that the district court erred by (1) admitting hearsay testimony, (2) denying his motion for mistrial based on improperly admitted testimony, and (3) refusing to instruct the jury regarding eyewitness identification. We affirm.

**BACKGROUND**

{2}     Defendant and his co-defendant, Joshua Mondragon, were charged with armed robbery, aggravated burglary, and aggravated battery. Sean Ware (Victim) testified at trial as follows. On March 15, 2014, Victim was living with his parents, who were out of town. Early in the morning, Victim was watching television in a chair and dozing with the door unlocked. The door opened, and when Victim stood, he saw Defendant and another man enter the residence. Victim testified that the men were named John and Josh. Victim, who referred to Defendant as "Hollywood," knew Defendant through a mutual friend and had met him three or four times prior to that morning. Victim did not know Defendant's last name but knew that his "real" name was John.

{3}     Defendant first asked Victim where Defendant's girlfriend was, and then began hitting Victim with brass knuckles while saying "a lot of angry things." Mondragon also beat Victim with a broom handle and a pool stick. The attackers were in the house for thirty to forty-five minutes. Eventually, Defendant and the other man asked where the keys to a truck that belonged to Victim's father were located. Victim testified that, although he did not provide the location of the keys,

2

the two men found them and took the truck, along with the television, a DVD player, and Victim's cell phone.

{4}     Victim was then able to pull himself up from the floor, and as he closed the door, he saw the men pulling away from the house in his father's gold-colored pickup truck, with two women following in a white pickup truck. Victim cleaned himself up and walked about ten blocks to a friend's house to call the police. When officers arrived, Victim identified Defendant as the perpetrator and later again identified Defendant when shown a photograph of Defendant.

{5}     On cross-examination, Victim admitted that he had used methamphetamine about two days before the attack. He also admitted to selling things in the past to support his methamphetamine habit. Although he could not recall what the attackers were wearing because his memory of the incident was "kind of fuzzy," Victim provided officers the most complete description of his attackers that he could.

{6}     Also at trial, Officer Daniel Casarez testified that he was dispatched to investigate an abandoned truck in a field. The vehicle was directly across the street from an address where Officer Casarez found Mondragon. The State asked Officer Casarez if anyone else lived at that address, at which point defense counsel objected on hearsay and foundation grounds. The district court ruled that the admissibility of the testimony depended on where the officer "got the

3

information[.]" Officer Casarez then testified that he obtained the information from "our system and previous incidents involving [Defendant]." The State did not ask any follow-up questions about the address, but instead asked about the abandoned vehicle.

{7} Defense counsel again objected and requested a mistrial, arguing that Officer Casarez's testimony referenced previous incidents involving Defendant and law enforcement that were inadmissible. The district court agreed that the testimony was improper but ruled that it did not necessitate a mistrial. Nonetheless, the district court offered a curative instruction, but cautioned that such an instruction likely would draw more attention to the testimony. Defense counsel declined the curative instruction. Following this exchange, Officer Casarez's testimony related to the abandoned vehicle and how the authorities located the co-defendant at the residence across the street.

{8} Ultimately, the jury found Defendant not guilty of armed robbery and aggravated burglary but guilty of aggravated battery. This appeal followed.

**DISCUSSION**

{9} Defendant argues on appeal that Officer Casarez provided inadmissible hearsay testimony when he referred to a particular address and implied that Defendant lived there. Defendant additionally argues that the district court erred in denying Defendant's motion for mistrial relating to Officer Casarez's reference to

4

Defendant's previous police interactions. Defendant finally contends that the district court improperly refused to instruct the jury regarding eyewitness identifications. We take each argument in turn.

**I.       The Address-Related Testimony Did Not Constitute Reversible Error**

{10}    While Defendant acknowledges that Officer Casarez "did not directly testify to [Defendant's] address[,]" he argues that during the exchange between the witness and the State, the "information came in as indirect hearsay, had the same intended effect as if it was testified to directly, and was similarly inadmissible." Defendant contends the district court erred by permitting this indirect hearsay, lacking foundation.

{11}    "An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion and a demonstration that the error was prejudicial rather than harmless." *State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420 (internal quotation marks and citation omitted). "We review improperly admitted evidence for non-constitutional harmless error." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. "[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (internal quotation marks and citation omitted).

> When assessing the probable effect of evidentiary error, courts should evaluate all of the circumstances surrounding the error. This

5

> includes the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative.

*Serna*, 2013-NMSC-033, ¶ 23 (internal quotation marks and citation omitted).

**{12}** We first address whether the district court in fact admitted hearsay testimony pertaining to Defendant's address. Defendant cites out-of-state cases to support his argument that a witness may not offer hearsay evidence in the guise of non-hearsay testimony. The State responds that Officer Casarez did not expressly communicate the contents of any out-of-court statements and that the cases offered by Defendant do not guide our inquiry because the specific hearsay information in those cases was actually communicated to the jury. We agree with the State.

**{13}** Defendant relies on *United States v. Check*, 582 F.2d 668 (2d Cir. 1978), *Mitchell v. Hoke*, 745 F. Supp. 874 (E.D.N.Y. 1990), and *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So. 2d 801, in support of his argument that Officer Casarez's testimony was inadmissible hearsay. These cases are all distinguishable. In each case cited by Defendant, the prosecutor used a testifying witness to introduce statements made by a non-testifying witness concerning out-of-court accusations against or identifications of the defendant. *See Check*, 582 F.2d at 675; *Mitchell*, 745 F. Supp. at 876; *Broadway*, 96-2659, pp. 8-9 (La. 10/19/99). In contrast, here, the State did not elicit information about any out-of-court identification, nor did the State extract testimony about the officer's investigation

6

and conversations with informants or witnesses. Rather, the State asked a single, non-leading question: "Do you know who else, if anyone, lived [at the address in question]?" Notwithstanding that defense counsel himself stated during opening remarks that the truck was found across the street from Defendant's property, counsel objected and the State agreed to lay additional foundation. When Officer Casarez answered that he knew Defendant's address based on system records and previous interactions, the State then immediately turned to a different line of questioning. Officer Casarez did not testify about Defendant's address, nor did he imply that Defendant lived at the address at which the co-defendant resided. Defendant can point to no out-of-court statement relayed by Officer Casarez that was offered for the truth of its contents.

{14}     Even if we were to assume that Officer Casarez's statements contained impermissible hearsay, reversal is warranted "only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." *State v. Barr*, 2009-NMSC-024, ¶ 54, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37. We can make no such conclusion. The State never mentioned Defendant's address again at trial. The jury acquitted Defendant of the crimes associated with the truck, i.e., armed robbery and aggravated burglary. Additionally, Defendant's address had little, if any, bearing

7

on the aggravated battery for which Defendant was convicted or Victim's identification of Defendant, which was based solely on the fact that he knew what his attackers looked like. Even if Officer Casarez's testimony contained impermissible hearsay, the error was harmless because there is no reasonable probability that the inadmissible evidence contributed to Defendant's conviction. *Tollardo*, 2012-NMSC-008, ¶¶ 36, 43.

**II.  The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion for Mistrial Based Upon Improper Testimony**

{15}    Defendant objected to Officer Casarez's testimony that he knew Defendant through prior incidents and requested a mistrial based on this improper testimony. The district court offered a curative instruction, although the court cautioned that such an instruction could draw more attention to the improper testimony, and denied Defendant's motion for a mistrial. Defendant argues the district court's denial of his motion for mistrial is erroneous. "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Samora*, 2013-NMSC-038, ¶ 22, 307 P.3d 328 (internal quotation marks and citation omitted). As previously stated, where an evidentiary ruling is the basis for the district court's alleged error, we determine whether the non-constitutional error is harmless. *See Smith*, 2016-NMSC-007, ¶ 46; *Serna*, 2013-NMSC-033, ¶¶ 22-23; *Tollardo*, 2012-NMSC-008, ¶ 36.

8

{16} Defendant concedes that the offending comment was unsolicited. *See State v. Vialpando*, 1979-NMCA-083, ¶¶ 23-27, 93 N.M. 289, 599 P.2d 1086 (holding that unsolicited, improper comment did not warrant mistrial). Nor is there any indication in the record that the State mentioned this fact again at trial. *See Serna*, 2013-NMSC-033, ¶ 23. Defendant, instead, argues that the comment was highly prejudicial because the case "came down to whether the jury thought . . . [Victim] and his identification of [Defendant] were more credible than [Defendant's] mistaken identification defense" and "[t]o paint [Defendant] as someone with a criminal past unfairly undermine[d] his defense." The jury's verdict undercuts this contention. Indeed, the comment appears to have had no negative impact on the jury with respect to two of the three charges on which Defendant was acquitted.

{17} Finally, the district court offered a curative instruction, which defense counsel declined. "In reviewing inadvertent remarks made by witnesses, generally, the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect." *Samora*, 2013-NMSC-038, ¶ 22 (internal quotation marks and citation omitted). Likewise, defense counsel's refusal of a curative instruction indicates an assessment by counsel that "the slight chance the jury would assume [the defendant had a prior criminal record based on the comment] was not worth the risk of drawing their attention to it by having a curative instruction given." *Smith*, 2016-NMSC-007, ¶ 47. Based on the foregoing,

9

especially in light of the lack of any improper motive on behalf of the State, the district court did not abuse its discretion in denying Defendant's motion for mistrial based on Officer Casarez's improper comment.

### III. The District Court Did Not Err in Refusing to Give an Eyewitness Identification Instruction

{18} "The propriety of jury instructions is a mixed question of law and fact." *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113. "[W]e view the evidence in the light most favorable to the giving of the requested instruction[,]" and "[w]ith those facts in mind, we then review the issue de novo." *Id.* Defendant contends that he was entitled to an instruction on eyewitness identification because research establishes that eyewitness identifications are unreliable and other jurisdictions have determined that juries should receive guidance from the court about how to consider eyewitness testimony. We conclude that the rejection of a specific instruction on eyewitness identification was not reversible error. *See State v. Gallegos*, 1993-NMCA-046, ¶ 11, 115 N.M. 458, 853 P.2d 160.

{19} Although Defendant proposed five jury instructions relating to the State's burden, witness credibility, and eyewitness accounts, Defendant argues on appeal that it was error for the district court to refuse to give any instruction on eyewitness identification. Defendant proposed an instruction on eyewitness identification modeled after the Tenth Circuit Criminal Pattern Jury Instruction 1.29. After

10

hearing argument from counsel, the district court denied the instruction and ruled that the New Mexico Uniform Jury Instructions (UJIs) were sufficient to address Defendant's concerns. In so ruling, the district court instructed the jury as to witness credibility and reasonable doubt. *See* UJI 14-5020 NMRA; UJI 14-5060 NMRA.

{20}    Defendant relies on *State v. Henderson*, 27 A.3d 872 (N.J. 2011), in support of his position that recent research suggests eyewitness testimony is unreliable and that juries do not intuitively understand the vagaries of human memory. In *Henderson*, the New Jersey Supreme Court focused on the suggestiveness of the eyewitness identification and remanded the case for development of an extensive factual record on the subject. *Id.* at 877. A special master was appointed who held a hearing at which seven experts testified and hundreds of studies were presented for review. *Id.* The *Henderson* court adopted much of the special master's report. *Id.* at 877, 885-89. Ultimately, the court evaluated the scope and content of the scientific evidence and developed a framework for evaluating identification evidence. *Id.* at 892-922. The court also charged the jury instruction committee to revise existing eyewitness identification instructions in light of its decision. *Id.* at 925-26.

{21}    *Henderson* does not assist our analysis in this case. First, this case is factually distinct from *Henderson*, since Victim in this case had prior interactions

11

with Defendant and knew him by name. Additionally, unlike *Henderson*, Defendant does not challenge Victim's identification of him as overly suggestive. Further, no comparable factual record exists here, nor has any New Mexico court or jury instruction committee been presented with similar evidence and research to evaluate. To the extent Defendant suggests that our uniform jury instructions should be revisited and revised to incorporate the latest research on eyewitness identification, such an undertaking should be done at the direction of our Supreme Court. *Cf. Britton v. Boulden*, 1975-NMSC-029, ¶ 4, 87 N.M. 474, 535 P.2d 1325.

{22} Significantly, as Defendant acknowledges, the New Mexico Supreme Court and this Court have repeatedly found no error when a defendant requests an "eyewitness identification" instruction but the district court chooses instead to instruct the jury with the UJI on evaluating witness credibility. *See, e.g.*, *State v. Ortega*, 1991-NMSC-084, ¶ 72, 112 N.M. 554, 817 P.2d 1196, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683; *State v. Haynes*, 2000-NMCA-060, ¶ 23, 129 N.M. 304, 6 P.3d 1026; *Gallegos*, 1993-NMCA-046, ¶ 11; *see also* UJI 14-5020 comm. cmt. ("This instruction, together with the reasonable doubt instruction, UJI 14-5060, makes an instruction on the dangers of eyewitness testimony unnecessary."). Given this, the district court's rejection of the eyewitness identification instruction was not reversible error.

12

**CONCLUSION**

**{23}**    Defendant's conviction is affirmed.

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**JENNIFER L. ATTREP, Judge**

13