This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39916**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RICHARD MALISZEWSKI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joseph Montano, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Richard Maliszewski appeals his conviction for voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3(A) (1994). Defendant contends that (1) the district court committed evidentiary errors that deprived Defendant of a fair trial; (2) the district court erred in denying Defendant's request to include specific language in a jury instruction; and (3) the district court's errors amounted to cumulative error. For the following reasons, we affirm Defendant's conviction.

## BACKGROUND

**{2}** The State charged Defendant with second degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), along with the lesser included offense of voluntary manslaughter. At trial, Defendant did not dispute that he shot and killed Christopher Yazzie (Victim), but claimed that he did so in self-defense.

**{3}** The shooting was the culmination of an ongoing dispute between Defendant and Victim, who were neighbors. At first their relationship was amicable, but it degraded over time as Victim began to drink excessively and became unpredictable and violent. Defendant witnessed Victim engage in multiple violent altercations in the neighborhood over the coming years. On one occasion, Defendant witnessed Victim beating a man in his driveway. Defendant also witnessed numerous altercations between Victim and the police.

**{4}** Personal encounters between Defendant and Victim also became contentious. Victim threatened Defendant by showing him a modified baseball bat with knives duct-taped to the bat, and in 2017 the two got into an argument after Victim borrowed Defendant's phone and would not return it. In 2018, Victim had his water cut off and began asking neighbors for help. Defendant initially agreed to allow Victim to fill up water jugs from his hose but requested that Victim come ask him for permission before taking water. Despite Defendant's request, Victim "would come around and help himself to the water."

**{5}** On the day of the shooting, Defendant caught Victim with his girlfriend, Calvinlena Tso (Girlfriend), taking water from the main waterline leading to Defendant's house. Defendant told Victim that he did not want Victim or Girlfriend to come back on his property. A short time later, Girlfriend returned to Defendant's door asking for water and Defendant refused. Girlfriend warned Defendant that she was going to tell Victim that he refused to give her water. Victim came out into his front yard and started yelling at Defendant and challenged him to a fight yelling: "I'm gonna get water. I'm going to burn your house down. I'm going to beat your ass."

**{6}** Defendant retrieved his pistol from inside his house and approached the waist-level wall separating Defendant's driveway from Victim's front yard. Victim instructed Girlfriend to get the modified bat from the house. Defendant then moved closer with his gun raised until he was standing at the wall. Victim approached the wall unarmed and said, "It's time, [and] you need to die." Defendant testified that he had seen Victim jump the wall before and, upon hearing Victim's threat, felt in that moment that "it was going to be him or me, and I didn't want it to be me." Defendant shot Victim before Victim reached for the wall and he fell to the ground and died. Defendant then called 911.

**{7}** Defendant claimed that he acted in self-defense—requiring acquittal—or, alternatively, that he acted with adequate provocation—requiring reduction of his conviction to voluntary manslaughter. *See* UJI 14-5171 NMRA (stating that if the jury finds "a reasonable doubt as to whether the defendant acted in self[-]defense [it] must

find the defendant not guilty"); *see also* UJI 14-220 NMRA ("The difference between second degree murder and voluntary manslaughter is sufficient provocation . . . [s]ufficient provocation reduces second degree murder to voluntary manslaughter."). The evidentiary disputes centered on the admission of character evidence and impeachment evidence critical to the elements of self-defense. *See* Rule 11-404(A)(2) NMRA (discussing when character evidence of the defendant's or victim's pertinent character trait is admissible in criminal trials); *see also* Rule 11-405 NMRA (discussing in what form character evidence may be admitted). The jury convicted Defendant of voluntary manslaughter. With these facts in mind, we address each of Defendant's arguments in turn.

## DISCUSSION

### I. Evidentiary Errors

{8}     Defendant claims that the district court erred by (1) preventing him from impeaching multiple state witnesses regarding Victim's character for violence, including Girlfriend and Defendant's neighbor; (2) excluding Officer Cadroy's testimony of an encounter with Victim the day before the shooting, and excluding evidence of the precise amount of alcohol and fentanyl in Victim's body at the time of his death; (3) excluding the audio of Officer Formento's lapel video; and (4) admitting Detective Juarez's opinion testimony regarding what was occurring in the surveillance video already in evidence. We conclude that any errors were harmless and affirm.

{9}     We review the district court's admission or exclusion of evidence for an abuse of discretion. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs [either] when the ruling is clearly against the logic and effect of the facts and circumstances of the case," *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted), or when the trial court "applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913. We cannot conclude that "the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason," *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted), or as a misapprehension or misapplication of the law. *See State v. Lymon*, 2021-NMSC-021, ¶ 12, 488 P.3d 610. Absent a clear abuse of discretion we will not reverse the ruling below. *Sarracino*, 1998-NMSC-022, ¶ 20.

### A. Impeachment

{10}     Defendant argues that the district court erred by limiting his impeachment of Girlfriend and his neighbor Sean Byram regarding their knowledge of Victim's previous violent behavior. Defendant sought to impeach Girlfriend when she denied knowledge of Victim's character for violence with a specific altercation during which she stabbed Victim in self-defense. Although the district court prohibited Defendant from directly eliciting testimony of the stabbing incident under Rule 11-405, the district court ruled

that Defendant could use it for impeachment if Girlfriend opened the door to such testimony. Girlfriend, however, admitted that Victim was violent and unpredictable when he was drunk, and therefore did not open the door to impeachment with specific acts. *See* Rule 11-405(A) (stating that "the court may allow an inquiry into relevant specific instances of the [victim]'s conduct" on cross-examination). Therefore, Defendant was not prevented from impeaching Girlfriend and we see no error in the district court's ruling.

**{11}** Defendant also sought to question Byram about whether he had witnessed Victim becoming violent when drinking, intending to impeach him with his knowledge of Victim's previous violent acts. Defendant contended that Byram's knowledge of Victim's character was admissible as a prior inconsistent statement, challenging the basis of his knowledge in support of the opinion he espoused, or illustrating his bias. The district court prevented Defendant from questioning Byram about Victim's prior violent acts because they were inadmissible under Rule 11-405. Even if we assume the district court erred in preventing Defendant from impeaching Byram, such error was harmless.

**{12}** "We review improperly admitted [or excluded] evidence for non[]constitutional harmless error." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. "[N]on[]constitutional error is harmless when there is no reasonable probability the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (emphasis, internal quotation marks, and citation omitted). Defendant bears the initial burden of establishing that the claimed evidentiary errors had a probable impact on the jury's verdict. *See State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245 ("Defendant bears the initial burden of demonstrating that he was prejudiced by the error."). To determine whether the defendant established that the claimed evidentiary errors had a probable effect on the jury's verdict, we "must evaluate all circumstances surrounding the error." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215. In doing so, we examine "the source of the error, the emphasis placed on [it], evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted [or excluded] evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *Serna*, 2013-NMSC-033, ¶ 23. Such review necessarily requires a case-by-case analysis and thus the impact of an error in two factually analogous cases might in one case be harmful and be harmless in the other. *Tollardo*, 2012-NMSC-008, ¶ 44.

**{13}** We conclude that the district court's error, if any, in preventing Defendant from impeaching Byram was harmless. *See Serna*, 2013-NMSC-033, ¶ 23. Although the source of the error stemmed from the State's objection, all the other factors indicate the error was harmless. *See id.* First, the emphasis placed on Byram's characterization of Victim as nonviolent and its importance to the State's case was marginal. The State only once mentioned Byram's testimony in closing arguments**.** Instead, the State focused on the surveillance video footage as the crucial evidence to rebut Defendant's claim of self-defense, emphasizing the importance of videos thirty-three separate times during closing. The State also relied on Defendant's own testimony to rebut whether his fear of Victim was reasonable. The State argued that Defendant's prior interactions with Victim and his testimony that he shot Victim before Victim could "grab the fence"

separating them indicated he was not afraid of Victim and was not acting out of fear. Therefore, Byram's testimony of Victim's character for peacefulness was not emphasized by the State and unimportant to the State's case overall.

**{14}** Second, any impeachment of Byram regarding Victim's character for violence would have been cumulative. Defense counsel elicited reputation and opinion testimony regarding Victim's violent and unpredictable nature from nearly every witness: including Girlfriend, Officer Cadroy, Defendant, Defendant's son, Officer Bonet, and Skylar Rice. As well, defense counsel elicited testimony of specific acts of Victim's violence through multiple witnesses. The jury heard ample evidence establishing Victim's character for violence, and thus impeachment of Byram would have been cumulative.

**{15}** Finally, substantial evidence was presented that Defendant did not act in self-defense: (1) Defendant escalated a verbal altercation by retrieving a firearm from inside his home; (2) Defendant approached the fence separating his own property from Victim's property first, bringing the firearm he retrieved from inside; (3) Victim was unarmed during the course of the entire altercation; and (4) Defendant shot Victim before Victim had the opportunity to cross the property line. All of this evidence supports the conclusion that Defendant was not acting in self-defense. Therefore, the district court's error, if any, in preventing Defendant from impeaching Byram was harmless.

**B.     Exclusion of Officer Cadroy's Testimony and the Amount of Alcohol and Fentanyl in Victim's Body**

**{16}** Defendant contends that the district court abused its discretion by excluding evidence of Officer Cadroy's encounter with Victim the day before the shooting and by excluding the amount of alcohol and fentanyl in Victim's body at the time of death. Because we presume that the trial court is correct and Defendant failed to clearly demonstrate that the trial court erred, we are not persuaded. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("[I]t is [the d]efendant's burden on appeal to demonstrate any claimed error below.").

**{17}** The district court found that the relevance of Officer Cadroy's encounter with Victim the day before the shooting was outweighed by its prejudicial effect by determining that the lapse of time between the incident and the shooting was too great for the interaction to be relevant to Victim's level of intoxication. *See* Rule 11-403 NMRA. Defendant asserts that Officer Cadroy's encounter with Victim is admissible to corroborate other evidence of Victim's violent character but does not explain how the evidence is relevant to Victim's intoxication at the time of the shooting nor how the corroborative effect of the testimony is not outweighed by its prejudicial effect. Therefore, we decline to consider the matter further. *See State v. Candelaria*, 2019-NMCA-032, ¶ 48, 446 P.3d 1205 (declining to review an undeveloped claim because "we will not review unclear arguments, or guess at what a party's arguments might be" (alterations, internal quotation marks, and citation omitted)).

**{18}** Defendant contends that the district court also erred by excluding the levels of alcohol and fentanyl in Victim's body at his time of death. The district court concluded that, without expert explanation regarding the effects and the amounts of alcohol and fentanyl found in Victim's body would have had, the raw numbers could confuse the jury. On appeal, Defendant does not address this rationale for exclusion either, and we therefore have no basis for concluding that the district court abused its discretion. *See Aragon*, 1999-NMCA-060, ¶ 10 (explaining it is appellant's burden to show why the district court erred).

## C.  Exclusion of Audio from Officer Formento's Lapel Video

**{19}** Defendant argues that the district court's exclusion of the audio from Officer Formento's lapel video was error. Defendant sought to play nine minutes of Officer Formento's lapel video along with the accompanying audio to show the jury Defendant's frail health and fear immediately after the shooting in order to corroborate the reasonableness of Defendant's actions. The district court allowed Defendant to play six minutes of the lapel video but excluded the audio as cumulative and containing hearsay. We are not persuaded that this was an abuse of discretion.

**{20}** Although Defendant argues on appeal that the district court's ruling that the audio contained hearsay was erroneous, he does not address the district court's ruling related to the cumulative nature of the audio. The lapel video without the audio recording, along with Officer Formento's testimony demonstrated the extent of Defendant's medical conditions and physical demeanor after the shooting. Defendant also elicited testimony from other witnesses regarding Defendant's demeanor after the shooting. Defendant does not explain, in light of this additional evidence about Defendant's demeanor after the shooting, how the district court abused its discretion in determining the audio was cumulative. We therefore decline to consider the matter further. *See Candelaria*, 2019-NMCA-032, ¶ 48 (declining to review an undeveloped claim because "we will not review unclear arguments, or guess at what a party's arguments might be" (alterations, internal quotation marks, and citation omitted)).

## D.  Admission of Detective Juarez's Testimony and Impeachment Evidence

**{21}** Lastly, Defendant argues that the district court's admission of Detective Juarez's opinion testimony and refusal to allow Defendant to impeach her with her prior grand jury testimony was error. We agree with Defendant that the district court erred in allowing Detective Juarez to opine on the content of the video, as she was in no better position than the jury to interpret the video. *See State v. Chavez*, 2022-NMCA-007, ¶ 42, 504 P.3d 541 (holding that it was error to allow an officer to testify as to what was shown in a video already in evidence because "she was no more likely than the jury to be able to accurately determine" what the video showed). Nevertheless, we conclude the error was harmless. Furthermore, we conclude that the district court properly exercised its discretion in preventing Defendant from impeaching Detective Juarez under Rule 11-403.

**{22}** The district court's decision to allow Detective Jaurez to opine on the contents of the surveillance video was harmless. *See Serna*, 2013-NMSC-033, ¶ 23 (listing the factors we consider when determining if an error is harmless). Again, the State's emphasis on Detective Juarez's opinion was minimal. Although it is true that the surveillance video footage of the altercation was critical to the State's case, the State did not mention Detective Juarez's description of what occurred in the video once during closing arguments. Instead, the State encouraged the jury to "[r]eview the video, and watch it all," arguing that the video itself was the only necessary evidence and "worth [more] than [the] testimony." Moreover, although it is true that the quality of the surveillance video footage is poor, and it's difficult to see whether Victim attempts to grab the fence before the shooting, and whether or not Victim attempted to jump the fence bears little on Defendant's guilt. Victim was unarmed and Defendant was the individual who escalated the verbal confrontation to deadly encounter. Defendant was also the individual who approached the fence first. Thus, whether or not Victim grabbed for the fence was unimportant to the State's case.

**{23}** Second, as stated above, the remaining evidence showing that Defendant did not act in self-defense is substantial. Therefore, Defendant failed to establish that the admission of Detective Juarez's opinion had a probable impact on the jury's verdict and thus we conclude that any error in admitting her opinion was harmless. *See Astorga*, 2015-NMSC-007, ¶ 43.

**{24}** Finally, impeaching Detective Juarez with prior grand jury testimony about a hearsay statement already in evidence was likely to confuse the jury and waste time. *See State v. Barela*, 2019-NMCA-005, ¶ 26, 458 P.3d 501; *see also* Rule 11-403 (stating that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by . . . wasting time"). Thus, even if admission of Detective Juarez's opinion was error, the evidence was harmless and the refusal to allow impeachment was appropriate under Rule 11-403. *See State v. Patterson*, 2017-NMCA-045, ¶ 15, 395 P.3d 543.

## II. Jury Instruction

**{25}** Defendant contends that the district court erred in failing to include the bracketed language regarding "defending property" from UJI 14-5190 NMRA in jury instruction No. 14, its duty to retreat instruction. Specifically, he argues that failing to include such language was error because there was sufficient evidence presented at trial to support including it. *See State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69. Defendant also contends that omitting the requested language from the instruction could leave the jury with the erroneous understanding that as a matter of law either (1) Defendant became the first aggressor when he retrieved his gun and returned to his yard; or (2) it was unreasonable for Defendant not to retreat into his home. *See State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113.

**{26}** "The propriety of jury instructions given or denied is a mixed question of law and fact," which this Court reviews de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123

N.M. 778, 945 P.2d 996. If the contended failure to provide a jury instruction was preserved below, we review the failure to do so for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Although "we view the evidence [presented to the district court] in the light most favorable to the giving of the requested instruction," *Romero*, 2005-NMCA-060, ¶ 8, failure to give a jury instruction on the defendant's theory of the case is only reversible error if sufficient evidence has been presented at trial to "allow reasonable minds to differ as to all elements of the offense." *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 (internal quotation marks and citation omitted). Therefore, the district court need not provide a defendant's requested language absent sufficient evidence supporting it. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355. Moreover, although it is also reversible error if a given jury instruction would have confused or misdirected a reasonable juror, *Benally*, 2001-NMSC-033, ¶ 12, a given jury instruction is sufficient when, reading all the instructions as a whole, "they fairly and correctly state the applicable law." *State v. Rushing*, 1973-NMSC-092, ¶ 20, 85 N.M. 540, 514 P.2d 297.

**{27}**   The jury instruction at issue reads, "A person who is defending against an attack need not retreat. In the exercise of the right of self[-]defense, a person may stand the person's ground and defend himself." The district court determined that Defendant was not entitled to the "defending property" language because his testimony about Victim uttering a threat against property before Victim approached the wall at the property line did not warrant giving the instruction. Considering Defendant's testimony, the district court concluded that the defense's theory was that Defendant acted in self-defense when he shot Victim at Defendant's property line. Defendant argued that if the court did not add the "defending property language" to the instruction, it should prohibit the State from arguing that Defendant should have stayed in his home. The district court refused to limit the State's argument.

**{28}**   Even viewing the evidence in the light most favorable to including the additional language in the instruction, *see Romero*, 2005-NMCA-060, ¶ 8, we perceive no error. The requested language was not supported by Defendant's theory of the case nor by evidence presented. Defendant testified that he shot Victim because Victim threatened to kill him. Moreover, Defendant failed to request a separate instruction on defending property or defending habitation despite his claim that including such language was critical to his case. *See* UJI 14-5170 NMRA; UJI 14-5180 NMRA. Accordingly, we conclude that the district court did not err.

## III.   Cumulative Error

**{29}**   Finally, Defendant contends that the cumulative effect of the claimed errors denied him a fair trial. *See State v. Lopez*, 2018-NMCA-002, ¶ 36, 410 P.3d 226 ("Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." (internal quotation marks and citation omitted)). Although we have found one error occurred and assumed another, Defendant has failed to develop

an argument, with citation to persuasive authority, why these purported errors amounted to cumulative error such that he was deprived of a fair trial. *See State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 ("The doctrine cannot be invoked if no irregularities occurred, or if the record as a whole demonstrates that a defendant received a fair trial." (citation omitted)). We therefore decline to review this argument further.

**CONCLUSION**

**{30}** We affirm.

**{31}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**ZACHARY A. IVES, Judge**